[Cite as *Collins v. Collins*, 2011-Ohio-2339.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

AMANDA M. COLLINS,

    PLAINTIFF-APPELLANT/
    CROSS-APPELLEE,               CASE NO. 9-10-53

    v.

DAVID W. COLLINS,

                                      **O P I N I O N**

    DEFENDANT-APPELLEE/
    CROSS-APPELLANT.

Appeal from Marion County Common Pleas Court
Domestic Relations Division
Trial Court No. 2009 DR 0329

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  May 16, 2011

APPEARANCES:

    *Keith A. Kochheiser*  for Appellant/Cross-Appellee

    *Kevin P. Collins*  for Appellee/Cross-Appellant

**SHAW, J.**

{¶1} Plaintiff-appellant/Cross-Appellee, Amanda Collins ("Amanda"), and Defendant-appellee/Cross-Appellant, David Collins ("David"), appeal the August 26, 2010 judgment of the Common Pleas Court, Family Division, of Marion County, Ohio, granting the parties a divorce. On appeal, both parties contend that the trial court made several errors in dividing marital property, separate property, and debts, and in computing child support.

{¶2} The facts relevant to this appeal are as follows. Amanda and David were married on August 17, 2002. Two children were born to the parties during the marriage, one in 2006 and the other in 2008. On November 4, 2009, Amanda filed a complaint for divorce. David filed an answer to that complaint and also filed a counterclaim for divorce. The parties participated in mediation as to issues regarding the children and were able to agree on a shared parenting plan.

{¶3} The final divorce hearing in this matter was held on April 26 and June 30, 2010. During this hearing, the parties informed the trial court that they agreed on a shared parenting plan and they agreed that their household goods and various items of personal property had been equally distributed between them. Largely at issue in the hearing were Amanda's and David's debts, consisting mostly of student loan debt, their earnings, and their retirement funds. Both Amanda and

David testified at the hearing and presented a number of exhibits for the trial court to consider in dividing their marital and separate property.

{¶4} On August 26, 2010, the trial court filed its judgment entry in this matter. The court ordered that the parties equally divide their retirement funds (Amanda had one and David had two), which had all been accumulated during the marriage, by QDRO and to equally share any costs incurred to complete this division. The trial court awarded the marital home to David and ordered that he be responsible for the mortgage debt thereon. The trial court further awarded both of the parties the vehicles each had in their respective possession, including any debt on the vehicle in his or her possession. The court ordered David to continue to provide health insurance coverage for the children and ordered the parties to equally divide any uncovered medical expenses. Amanda was ordered to pay 60% of the daycare expenses of the children, and David was to pay the remaining 40%. Amanda was also ordered to pay child support of $123.73 per month. The trial court also attached to its entry a copy of the child support guidelines worksheet it completed to determine the amount of child support.

{¶5} As to their student loan debt, the trial court ordered that Amanda would be responsible for paying $15,600.00 and David would be responsible for paying $23,400.00 of their consolidated loan. Amanda was also ordered to pay $14,700.00 on the Great Lakes student loan, and David was ordered to pay

$8,000.00 on the CitiBank student loan and $5,000.00 on a different Great Lakes student loan.  Lastly, Amanda was ordered to pay the Bank of America debt of $3,000.00, and David was ordered to pay the Capital One credit card debt of $1,000.00.

**{¶6}** Amanda now appeals, asserting three assignments of error, and David now appeals, asserting six assignments of error.

### AMANDA'S FIRST ASSIGNMENT OF ERROR

**WHEN REQUESTED BY APPEALANT [*sic*] IN HER PLEADINGS TO BE RESTORED TO HER MAIDEN NAME, IT IS ERROR FOR THE COURT NOT TO DO SO IN ACCORDANCE WITH REVISED CODE 3105.16.**

### AMANDA'S SECOND ASSIGNMENT OF ERROR

**THE COURT ERRED IN ITS COMPUTATION OF CHILD SUPPORT PURSUANT TO REVISED CODE 3119.01(B)(7)(d), BY FAILING TO USE THE MANDATORY DEDUCTION FROM WAGES, I.E. UNION DUES, FOR APPEALANT [*sic*] AND USING THEM IN ITS WORKSHEET, LINE 12, PURSUANT TO REVISED CODE 3119.022.**

### AMANDA'S THIRD ASSIGNMENT OF ERROR

**THE COURT, IN DIVIDING THE DEBTS, FAILED TO FOLLOW REVISED CODE 3105.171(B) AND (D) BY MAKING EACH SPOUSE RESPONSIBLE FOR A SEPARATE DEBT OF THE OTHER SPOUSE AND FAILING TO GIVE AN EXPLANATION AS TO WHY, THUS RESULTING IN DIVORCED SPOUSES INSTEAD OF BEING SEPARATE ENTITIES KEPT THEM OBLIGATED TO THE OTHER AFTER DIVORCE.**

## DAVID'S FIRST ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO THE PREJUDICE OF DAVID BY DESIGNATING AMANDA RESIDENTIAL PARENT FOR SCHOOL PLACEMENT PURPOSES.**

## DAVID'S SECOND ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO THE PREJUDICE OF DAVID BY DETERMINING AMANDA'S CHILD SUPPORT OBLIGATION TO BE $123.73 PER MONTH.**

## DAVID'S THIRD ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO THE PREJUDICE OF DAVID BY ORDERING EACH OF THE PARTIES' THREE RETIREMENT ACCOUNTS BE DIVIDED EQUALLY BY DIVISION OF PROPERTY ORDERS.**

## DAVID'S FOURTH ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO DAVID'S PREJUDICE AND ABUSED ITS DISCRETION BY VALUING AMANDA'S STRS AS OF JUNE 30, 2009.**

## DAVID'S FIFTH ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO DAVID'S PREJUDICE AND ABUSED ITS DISCRETION BY DETERMINING THE VALUE OF THE 2000 FORD EXPLORER TO BE $3,850.**

## DAVID'S SIXTH ASSIGNMENT OF ERROR

**THE FAMILY COURT ERRED TO THE PREJUDICE OF DAVID BY DIVIDING THE MARITAL ESTATE INEQUITABLY AND UNEQUALLY.**

{¶7} For ease of discussion, we elect to address some of the assignments of error out of the order in which they appear and to address some of the assignments of error, which are interrelated, together.

*Amanda's First Assignment of Error*

{¶8} In her first assignment of error, Amanda asserts that the trial court erred in failing to restore her to her former name of Amanda Wood. The Revised Code provides that "[w]hen a divorce is granted the court of common pleas *shall*, if the person so desires, restore any name that the person had before the marriage." R.C. 3105.16 (emphasis added.) Amanda's prayer for relief in her complaint for divorce requests that she be restored to her maiden name of Amanda Wood. Thus, the trial court was required to restore her to her former name. The trial court failed to restore Amanda to her former name, and, as such, this assignment of error is sustained.

*David's First Assignment of Error*

{¶9} David contends in his first assignment of error that the trial court erred by designating Amanda the residential parent for school purposes rather than him. In support of this position, David maintains that the parties made the following stipulation at the April 26, 2010 hearing:

> **Residential parent for school purposes. The language in the proposed plan shall continue. If the children cannot be enrolled**

**in River Valley School District, the Father shall be designated residential parent for school purposes.[1]**

David further maintains that the trial court was required to incorporate this stipulation by the parties and abused its discretion in failing to do so.

{¶10} This Court has previously noted that

**[c]ourts in Ohio have long held that formal stipulations of fact submitted to the court are in the nature of a special verdict by a jury, being the equivalent of proof being made by both parties. Thus, a stipulation of fact is no different from a jury determination of fact. The result is that once a trial court has accepted a stipulation of fact, it must base its conclusions of law upon those stipulations.**

*Snyder v. Snyder*, 3rd Dist. No. 14-06-52, 2007-Ohio-2676, ¶ 13. Further, "a stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in that case." *Horner v. Whitta* (Mar. 16, 1994), 3rd Dist. No. 13-93-33, unreported, 1994 WL 114881.

{¶11} While, generally, a trial court should adopt a factual stipulation of the parties, the question of who is to be designated the residential parent is not a factual question; it is a legal determination. See, generally, R.C. 3109.04(A),

---

[1] David cites this Court to page 15 of the transcript of the April 26, 2010 hearing and to Amanda's "Exhibit C" for this language. However, Exhibit C, entitled "Mutually Agreed upon Alterations to the Shared Parenting Plan," contains information about what the parties will do in the event that the children are sick and what the transfer time will be during the summer. It contains no information about where the children will attend school and/or who is to be designated the residential parent for school purposes nor is there any information in this regard on page 15 of the transcript or on the pages immediately preceding and following page 15.

(B)(1). Further, when deciding issues related to the allocation of parental rights and responsibilities for the care of a child, the trial court is always required to consider what is in the best interest of the child regardless of whether the parents can agree. See R.C. 3109.04(A), (B)(1). Thus, the trial court was not required in this case to designate David as the residential parent for school purposes simply because the parties may have agreed on this issue, if it were to find that the proposed shared parenting plan was not in the best interests of the children.

{¶12} However, even if the trial court was required to adopt this agreement, a review of the record does not reveal that the trial court was made aware of any such agreement. Rather, David's "Exhibit 1," the shared parenting plan to which the parties agreed, contains the following language regarding the children's education:

> **The parties agree that their first choice for school attendance would be River Valley Schools. If the parents cannot agree on the school that the children attend, in the event that River Valley Schools are not feasible for attendance, the parties agree to return to mediation February before the school year when Addison would be attending Kindergarten. Once a school district is agreed upon, the children cannot be removed from that school district unless both parents agree to do so.**

(Div. Hrg. Tran., 4/26/10, p.15, Defendant's Exh. 1.)

{¶13} Neither party testified that they agreed that David be designated the residential parent for school purposes. In fact, David's own testimony established

-8-

that this was a point of contention between the parties. After Amanda testified at the April 26, 2010 hearing, David testified. During his direct examination, David was asked about the shared parenting plan and whether there were any exceptions, modifications, or remaining issues in his opinion, and specifically in regards to school placement. David responded:

> **The issue is the children were born – in my perspective, the children were born in Marion, they've always been in Marion, their family's in Marion or very close to Marion. The Plaintiff has now moved to Delaware County. I want something done as far as school placements go. I think we both agree that the children aren't gonna go to Delaware County. However it occurred to me – (inaudible) – you're a resident now of Delaware County [Amanda resided in Delaware County at the time of the hearing], that puts the issue – (inaudible) – We agreed that the children should go to River Valley if they can but there's no guarantee on that. \* \* \* I feel that the Court needs to name a residential parent for the – (inaudible) – I'm still in Marion County, I can – just for school purposes I can – (inaudible) – with the Plaintiff's situation, residential situation, she cannot open enroll the children in River Valley.**

(Div. Hrg. Tran., 4/26/10, pp. 22-23.) David then testified that he wanted to be designated the residential parent for school placement purposes, but he never testified that this was an agreement between the parties. Given the state of the record, we find that the trial court did not err by failing to adopt an agreement of which it was not aware.

{¶14} Moreover, an appellate court reviews a trial court's decisions on child custody matters for an abuse of discretion. *Miller v. Miller* (1988), 37 Ohio

St.3d 71, 523 N.E.2d 846; *Erwin v. Erwin*, 3rd Dist. No. 14-05-45, 2006-Ohio-2661, ¶ 12. An abuse of discretion connotes more than an error of judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶15} In its judgment entry, the trial court adopted the following portion of the shared parenting plan:

> **The parties agree that their first choice for school attendance would be River Valley Schools. The children cannot be removed from the River Valley School District unless both parents agree to do so.**

The trial court also ordered that Amanda be designated residential parent for school purposes. There is nothing in the record and David has not provided any basis beyond what we have previously discussed to demonstrate that the trial court acted unreasonably, arbitrarily, or unconscionably in designating Amanda the residential parent. Therefore, we cannot find that the trial court abused its discretion, and David's first assignment of error is overruled.

{¶16} Nevertheless, upon reviewing the proposed shared parenting plan and the trial court's judgment entry, we find that the trial court adopted only a portion of the section entitled "Allocation of Parental Rights and Responsibilities" of the

-10-

shared parenting plan, which we quoted in the preceding paragraph, rather than adopting the plan as proposed. However, the Revised Code states

> **(D)(1)(a) Upon the filing of a pleading or motion by either parent or both parents, in accordance with division (G) of this section, requesting shared parenting and the filing of a shared parenting plan in accordance with that division, the court shall comply with division (D)(1)(a)(i), (ii), or (iii) of this section, whichever is applicable:**
>
> **(i) If both parents jointly make the request in their pleadings or jointly file the motion and also jointly file the plan, the court shall review the parents' plan to determine if it is in the best interest of the children. If the court determines that the plan is in the best interest of the children, the court shall approve it.** *If the court determines that the plan or <u>any part of the plan</u> is not in the best interest of the children, the court shall require the parents to make appropriate changes to the plan to meet the court's objections to it.* **If changes to the plan are made to meet the court's objections, and if the new plan is in the best interest of the children, the court shall approve the plan. If changes to the plan are not made to meet the court's objections, or if the parents attempt to make changes to the plan to meet the court's objections, but the court determines that the new plan or any part of the new plan still is not in the best interest of the children, the court may reject the portion of the parents' pleadings or deny their motion requesting shared parenting of the children and proceed as if the request in the pleadings or the motion had not been made. * * ***

R.C. 3109.04(D)(1)(a)(i) (emphasis added). The trial court unilaterally changed the submitted plan without determining that the changed portion was not in the children's best interest and without allowing the parties the opportunity to make the appropriate change.

**{¶17}** Thus, although we do not find that the trial court erred in failing to name David the residential parent for school placement purposes because this was not part of the agreement, we find that the trial court erred in unilaterally changing a portion of the submitted plan. Accordingly, upon remand, the trial court should also correct this error by following the requirements of R.C. 3109.04

*Amanda's and David's Second Assignments of Error*

**{¶18}** Both Amanda and David assert in their respective second assignments of error that the trial court erred in ordering that Amanda pay child support in the total amount of $123.73 per month. Amanda maintains that the trial court erred in this regard because it failed to include the mandatory deduction of her union dues in its computation of her support obligation. David contends that the trial court erred by basing the child support obligation on incorrect incomes for both parties, including not accounting for Amanda's increase in pay for the coming school year, and by failing to include the mandatory deduction of his union dues. David also asserts that the trial court erred in ordering that he be responsible for 50% of the children's uninsured medical expenses because the trial court should have ordered that they pay in proportion to their respective incomes.

**{¶19}** An appellate court reviews the trial court's determination of the amount of income to be imputed in a child support order under an abuse-of-discretion standard. *Rock v. Cabral* (1993), 67 Ohio St.3d 108, syllabus, 616

N.E.2d 218. The calculation of child support is governed by R.C. Chapter 3119. Pursuant to R.C. 3119.02, a court or child-support-enforcement agency must calculate the amount of a child support obligation according to the schedules and worksheets provided in R.C. 3119.02 to 3119.24. The trial court may deviate from the amount determined by using the appropriate worksheet only if after considering the factors and criteria set forth in R.C. 3119.23, it finds that the amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. The applicable worksheet for this case is found in R.C. 3119.022, entitled "Child Support Computation Worksheet for Sole Residential Parent or Shared Parenting Order," because the trial court ordered shared parenting.

{¶20} The first section in this worksheet requires information regarding the parties' incomes. Here, the trial court entered $39,689.00 for Amanda's annual gross income and $27,248.00 for David's annual gross income. "Gross income" is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable[.]" R.C. 3119.01(C)(7). According to Amanda's W-2 for 2009 (Plaintiff's Exhibit D), she earned $39,688.87. According to David's W-2 for 2009 (Defendant's Exhibit 2), he earned $25,055.13. When rounding to the nearest dollar, the trial court correctly listed Amanda's gross income as $39,689.00 based upon her W-2 for 2009.

However, there is nothing in the record to support the trial court's determination as to David's income. Thus, the trial court erred in using the $27,248.00 figure for David's income.

**{¶21}** David also contends that the trial court erred in failing to account for Amanda's pay raise. At the hearing, Amanda testified that, according to her contract, she was due to receive a pay increase sometime in August or September of 2010, and that she believed the amount of the increase was 15%. Neither party presented a copy of her contract or provided any calculation of what her income would be after the pay increase. Without this evidence, the trial court would have been engaging in speculation as to Amanda's future earnings. It is incumbent upon the parties to provide sufficient evidence of wages rather than relying upon the trial court's speculation. See *Dindal v. Dindal*, 3rd Dist. No. 5-09-06, 2009-Ohio-3528, ¶¶ 9-13. Therefore, we find that the trial court did not err in relying upon the evidence actually before it to determine Amanda's gross income.

**{¶22}** As for the deduction of union dues, the Revised Code provides that gross income does not include "[a]mounts paid for mandatory deductions from wages such as union dues[.]" R.C. 3119.01(C)(7)(d). The R.C. 3119.022 worksheet also includes a line for work deductions, such as union dues. Thus, a trial court should deduct those amounts paid for union dues. In this case, the trial court did not.

{¶23} However, upon reviewing the record, we find that the parties did not present sufficient evidence to determine the amount of union dues paid by them. For instance, although Amanda testified that she paid union dues, she failed to testify as to how much she paid in union dues. Further, her pay stubs (Plaintiff's Exhibits A and E) do not contain any information regarding union dues. As for David, he also did not testify as to any amount he paid for union dues. In reviewing his pay stubs (Defendant's Exhibit 21), some of them show the following description: "Communic Workers – Card Carry" in the amount of $29.48. Arguably, this *could* lead one to infer that this described his union dues. However, there was no testimony that this language was describing deductions for union dues or what his total payment of union dues was per year. Notably, neither party provided *this* Court with an exact amount paid for union dues either. Thus, any error in not including these deductions for either party was due to the lack of evidence presented by the parties, not because of any failure on the part of the trial court.[2] See *Dindal*, supra.

{¶24} Turning to the issue of whether the trial court erred in ordering the parties to each pay 50% of their children's uninsured medical expenses, including

---

[2] We also note that R.C. 3109.04(G) states: "A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as * * * child support obligations * * *." Thus, while we have found no authority for the proposition that a plan that fails to include a provision covering child support is a fatal defect to an adoption of the plan by a trial court, the error made by the trial court as to David's income and the issues raised regarding Amanda's income and both parties' union dues possibly could have been avoided if the parties would have included a provision in their plan for child support obligations.

-15-

extraordinary medical expenses, we find that the trial court did not abuse its discretion in this regard. The total amount paid by David to carry the children under his insurance was taken into account in the child support worksheet, see Worksheet Line 20a, as were the amounts expended by both parties for childcare (60% for Amanda, 40% for David), see Worksheet Lines 19a-19b. The parties have the children for equal amounts of time, each parent has been assigned one child for tax purposes, and David only has to pay 40% of the cost of child care. Further, there is not such a disparity in income levels that would demonstrate that Amanda, who is also ordered to pay David child support, would be in a better financial position to warrant paying more in uncovered expenses. Therefore, we do not find that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in dividing these expenses equally.

{¶25} For all of these reasons, Amanda's second assignment of error is overruled. In addition, David's second assignment of error is overruled in regards to the union dues, Amanda's current and future earnings, and the division of uncovered medical expenses. However, David's second assignment of error is sustained as to the calculation of child support based upon the figure used by the trial court for *his* gross income.

*David's Third and Fourth Assignments of Error*

**{¶26}** David's third and fourth assignments of error raise issues regarding the parties' retirement accounts. In his third assignment of error, David asserts that the trial court erred in ordering that each of the parties' three retirement accounts be divided equally with the parties equally sharing any costs incurred to complete this division. In his fourth assignment of error, David asserts that the trial court erred by valuing Amanda's retirement account at $32,465.57, which was its value as of June 30, 2009 – a year before the final hearing date, rather than to value it as of the date of the final hearing.

**{¶27}** The Revised Code requires a trial court to "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). The court is then required to "divide the marital and separate property equitably between the spouses[.]" Id. The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

**{¶28}** Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, paragraph two of the syllabus, 421 N.E.2d 1293. A trial court's

decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3rd Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. As previously noted, an abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶29} In this case, neither party disputed that their retirement accounts consisted wholly of amounts acquired during the marriage. Amanda, who was a teacher, presented a copy of her annual statement for her State Teacher's Retirement System account ("STRS") as of June 30, 2009, which was valued at $37,401.10 (Plaintiff's Exhibit K). This exhibit also showed Amanda contributed $3,740.10 in the 2008-2009 fiscal year. David, a former substitute teacher, presented his annual statement for his STRS as of June 30, 2009, which was valued at $2,126.75 (Defendant's Exhibit 17). This statement showed no contributions by David the preceding fiscal year. David, currently employed at The Ohio State University, also presented a statement of his Ohio Public Employees Retirement System account ("OPERS") as of March 31, 2010, which was valued at $9,100.54. This statement also showed contributions by David between January 1, 2010, and March 31, 2010, of $756.20, an investment gain of

$371.80 during this period, and a distribution/debit of $7.56, for a total change in value of $1,120.44 during this period.

**{¶30}** The trial court ordered that these three accounts be equally divided and that the parties were to equally share any costs incurred to complete this division. The court further ordered that counsel for each party prepare the necessary QDRO's to effect the transfer of interest to the other party.

**{¶31}** David asserts that the trial court should have ordered the preparation of only one QDRO because it was more expensive to prepare three QDRO's rather than one and that he would be the party to bear the extra expense of the preparation of the additional two QDRO's. David also contends that the trial court should have accounted for the additional fiscal year between Amanda's STRS statement and the date of the final hearing, taken into consideration that she would have contributed at least $3,740.10 during that fiscal year given her contribution the previous fiscal year, and then valued her STRS at a minimum of $36,205.67 rather than $32,465.57. We disagree.

**{¶32}** The trial court divided these accounts, which were indisputably marital property, between Amanda and David equally. As previously noted, this is what R.C. 3105.171(C)(1) requires unless it would be inequitable to do so. Further, the trial court ordered that any cost incurred to complete this division be split equally, not that each pay for their respective QDRO's which might have

resulted in a greater cost to David than to Amanda. Thus, we do not find that the trial court erred in ordering the equal division of these accounts and that counsel for each party prepare the necessary QDRO's to complete this division. Accordingly, David's third assignment of error is overruled.

{¶33} As for the valuation of Amanda's STRS, the trial court's judgment entry does not include a finding of any specific amount as asserted by David. Rather, the court ordered that her STRS be divided equally between the parties without providing a specific amount. The trial court also did not place a value on either of David's accounts but simply ordered that they, too, be divided equally. The Revised Code defines "marital property" to include all interest by either spouse in any property that was acquired by either during the marriage. R.C. 3105.171(A)(3)(a)(ii). The term "during the marriage" is defined, except as otherwise provided, as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce." R.C. 3105.171(A)(2)(a). Thus, the QDRO's would simply need to reflect the day of the termination of the marriage for the STRS administrator to determine the value of Amanda's STRS on that date without the trial court having to place a certain value on the account.

{¶34} The court determined that the parties were married on August 17, 2002, and noted that the final hearing occurred on April 26, 2010, and June 30, 2010. However, the trial court did not make a finding regarding the date of the

marriage's termination. The trial court has broad discretion in choosing the appropriate marriage termination date for purposes of property valuation. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 319, 432 N.E.2d 183. We have found no case law which defines "date of final hearing," either expressly as the date on which the hearing commences or the date on which the hearing is completed. Because the statute expressly defines "during the marriage" as "the period * * * through the date of the final hearing", it appears that either day may be appropriate. See *Milano v. Milano*, 5th Dist. No. 2004CA00390, 2005-Ohio-6302. Nevertheless, it is the trial court that is in the best position to determine which day to utilize, not this Court. Thus, while we conclude that the trial court did not err in failing to provide a specific valuation for Amanda's STRS, it did err when it also failed to determine the date of the termination of the marriage. In this case, the trial court should have placed a value on the STRS and/or determined the date of the termination of the marriage in order to ensure the proper amount would be utilized for the division of this asset, as well as David's retirement accounts.

{¶35} For these reasons, David's fourth assignment of error is overruled to the extent that he challenges the trial court's failure to properly value Amanda's STRS. However, we must sustain this assignment of error and remand this case to the trial court to determine the date of termination of the marriage so that the

QDRO may reflect this date in order to properly value the retirement accounts for this division.

*Amanda's Third Assignment of Error and David's*
*Fifth and Sixth Assignments of Error*

{¶36} The remaining assignments of error assert that the trial court erred in allocating and dividing the parties' marital and separate property and their debts. More specifically, Amanda asserts in her third assignment of error that the trial court erred in ordering her to pay David's credit card debt to Bank of America, totaling $3,084.58, and ordering him to pay her credit card debt to Capital One, totaling $1,000.00 because it leaves the parties in an economic entanglement due to those debts being in the other party's respective name. David asserts in his fifth assignment of error that the trial court erred in determining the value of the 2000 Ford Explorer, which was awarded to Amanda, to be $3,850.00, rather than $5,495.00. In his sixth assignment of error, David contends that the trial court's division of the marital property was neither equal nor equitable because it awarded Amanda nearly $11,000.00 more than it awarded to David without any off-set or distributive award and with no explanation as to why this division was equitable.

{¶37} As previously discussed, in a divorce proceeding, the trial court must determine whether property is marital or separate. *Gibson v. Gibson*, 3rd Dist. No. 9-07-06, 2007-Ohio-6965, ¶ 29, citing R.C. 3105.171(B), (D). This Court reviews

a trial court's classification of property as marital or separate under a manifest weight of the evidence standard. *Gibson*, 2007-Ohio-6965, at ¶ 26 (citations omitted). Accordingly, we will not reverse the trial court's judgment in this regard if the decision is supported by some competent, credible evidence. *DeWitt v. DeWitt*, 3ʳᵈ Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10.

{¶38} Once the trial court classifies the property, it must then "divide the marital and separate property equitably between the spouses[.]" R.C. 3105.171(B). The Revised Code further requires that a trial court divide the marital property *equally* unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry*, supra. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson*, 2008-Ohio-1482, at ¶ 15, citing *Holcomb*, 44 Ohio St.3d at 131, 541 N.E.2d 597.

{¶39} Marital property includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. See R.C. 3105.171(A)(3)(a). Property acquired during a marriage is

presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 15.

**{¶40}** The statute further states that "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Thus, traceability is the key to determining whether separate property has lost its separate character after being commingled with marital property. *Ward v. Ward*, 3rd Dist. No. 01-03-63, 2004-Ohio-1390, ¶ 4, citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

**{¶41}** In this case, Amanda and David both testified about their respective credit card debt and each agreed to assume the liability for the credit card debt in his or her name: David assuming the debt of $3,084.58 for the Bank of America credit card, and Amanda assuming the debt of $1,000.00 for the Capital One credit card. However, without explanation, the trial court ordered exactly the opposite, leaving the parties responsible for debt in the other party's name, unable to access information about the account in the future without the cooperation of the other, and with the ability to damage the other's credit by not paying, which could not be rectified simply by a contempt citation.

**{¶42}** Further, Amanda testified that the 2000 Ford Explorer, which was marital property that she wanted to retain in her possession, was valued in the

$5,000.00 range. David testified that the Kelley Blue Book showed that the 2000 Explorer was valued at $5,495.00. He also submitted a print-out from Kelley's Blue Book's website evidencing this amount (Defendant's Exhibit 7), and Amanda did not dispute this figure. Nevertheless, and once again, without explanation, the trial court found that this vehicle was valued at $3,850.00, leaving a $1,645.00 discrepancy in the division of assets and debts.

{¶43} Amanda and David also both testified that they received student loans to finance their respective educations prior to the marriage. The evidence revealed that as of June 28, 2010, Amanda owed $14,338.83 on her Great Lakes student loan, which originated before the marriage. The evidence further revealed that as of May of 2010, David owed $8,168.67 on his CitiBank student loan and as of April 22, 2010, he owed $5,059.21 on his Great Lakes student loan, both of which originated before the marriage. Although the trial court rounded these figures and included them as part of what it determined was the equitable distribution of the *marital* debt, it divided these loans according to which party incurred them *before* the marriage, not as a marital debt to be evenly divided.

{¶44} In addition, the parties both testified that they had other student loans that they individually received prior to the marriage but that they consolidated these loans during the marriage. However, they did not agree and did not present any documentary evidence as to the amount of each party's respective loan

amounts that were made a part of this consolidation.[3] At the time of the hearing, the remaining balance of this loan was $39,324.58 (Defendant's Exhibit 11.) According to David's trial brief, he agreed to be responsible for 60% of this debt (approximately $23,600.00) and Amanda would be responsible for 40% of this debt (approximately $15,700.00). Presumably in accordance with David's brief, the trial court ordered David to pay $23,400.00 of this debt and Amanda to pay $15,600.00 of this debt.[4] However, in David's proposed division of debts and assets, he also requested that Amanda be ordered to pay him the difference between them in order to reach an equal division, but the trial court did not make any such order.

{¶45} The trial court also awarded the marital home, valued at $78,370.00, to David, as requested by the parties, and ordered that he be responsible for the mortgage debt on the home of approximately $83,000.00. After dividing the other debts and assets, the trial court did not order any type of off-set or distributive award to either party to effectuate an equal division and provided no explanation

---

[3] Amanda testified that she consolidated only $6,000.00 of her student loans into this debt, and David testified that she consolidated more than that but did not provide an exact amount. Neither party presented any documentation of the amounts originally consolidated or how much each party individually consolidated.

[4] David also testified that he and Amanda agreed about their proportionate responsibility for the consolidated student loan. However, the specifics of this agreement were not contained in the transcript of the hearing. Instead, this portion of the transcript indicates that David's testimony was inaudible. (See Div. Hrg., 6/30/10, p. 100.)

as to how its division of property, which was not equal, was, nevertheless, equitable.

{¶46} Although the parties agreed which one would receive which vehicle, that each was entitled to one-half of the other's retirement, agreed to split the consolidated loan 60/40 with David paying the larger amount, agreed that David would receive the marital home, and divided their remaining personal property without requiring court intervention, they did not agree that the overall result was equitable or that there was no need for an off-set or distributive award. In reviewing the entire distribution of marital property, there is a significant difference in the final result. While there may be a justified explanation for why this unequal division is, nevertheless, equitable, the trial court failed to provide any such explanation and an explanation is not obvious from the record.

{¶47} Therefore, based on the above, Amanda's third assignment of error and David's fifth and sixth assignments of error are sustained to the extent that the trial court's judgment should be reversed and the matter remanded to determine an equal division of the marital property based upon accurate values of that property or to determine that an equal division would be inequitable, to provide reasons for such a determination, and to then make an equitable division.

{¶48} In summation, we reverse this matter for the trial court's failure to (1) restore Amanda to her prior name; (2) properly calculate child support based

upon the evidence presented as to David's actual income; (3) determine the date of termination of the marriage; (4) explain why each party was ordered to pay the credit card debts that were in the other party's name or to order the parties to be responsible for the credit card debt incurred in each party's respective name; (5) explain the valuation placed on the 2000 Ford Explorer; (6) explain the division of the student loans obligations between the parties; and (7) either distribute the marital property/debt equally or explain how the significant discrepancy in the distribution is, nevertheless, equitable. In addition, as previously noted, upon remand the trial court should also correct its error in unilaterally modifying a portion of the shared parenting plan by following the mandates of R.C. 3109.04.

{¶49} For all of these reasons, the judgment of the Common Pleas Court, Family Division, of Marion County, Ohio, is affirmed in part, reversed in part, and the matter remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**ROGERS, P.J., and PRESTON, J., concur.**

**/jlr**