[Cite as *Collins v. Collins*, 2012-Ohio-749.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

AMANDA M. COLLINS,

    PLAINTIFF-APPELLEE,             CASE NO. 9-11-32

    v.

DAVID W. COLLINS,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2009 DR 0329

**Judgment Affirmed**

Date of Decision: February 27, 2012

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Keith A. Kochheiser* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, David W. Collins ("David"), appeals the judgment of the Marion County Court of Common Pleas, Family Division, finalizing the property division and other issues in his divorce from Plaintiff-Appellee, Amanda M. Collins, nka Amanda M. Wood ("Amanda"). On appeal, David contends that the family court erred in calculating his salary for child support purposes; that it erred in valuing one of the vehicles; and that the property division was unequal and inequitable. For the reasons set forth below, the judgment is affirmed.

{¶2} Amanda and David were married on August 17, 2002, and two children were born during the marriage. On November 4, 2009, Amanda filed a complaint for divorce, and David also filed a counterclaim for divorce. The parties participated in mediation as to issues regarding the children and agreed on a shared parenting plan.

{¶3} The final divorce hearing in this matter was held on April 26 and June 30, 2010. The parties had reached agreement on a number of matters, so the primary issues that still remained to be decided were the division of Amanda's and David's debts, consisting mostly of student loan debt; child support; and the division of assets, consisting primarily of their retirement funds. Both Amanda

and David testified at the hearing and presented exhibits for the family court to consider in dividing their marital and separate property.

{¶4} On August 26, 2010, the family court filed its judgment entry in this matter. The court ordered that the parties equally divide their retirement funds by QDRO (Amanda had one, with STRS, and David had two, with STRS and PERS). The court awarded the marital home to David and ordered that he be responsible for the mortgage debt thereon. The court further awarded both of the parties the vehicles each had in their respective possession, including any debt on the vehicle in his or her possession. Amanda was ordered to pay child support of $123.73 per month, and David was to continue to provide health insurance coverage. Amanda was ordered to pay 60% of the daycare expenses of the children, and David was to pay the remaining 40%.

{¶5} As to their student loan debts, the family court ordered that Amanda would be responsible for paying $14,700.00 on a Great Lakes student loan that was in her name and was taken out before the marriage, and David would be responsible for paying $13,000.00 on two student loans that were in his name and had also been taken out before the marriage. In addition, the parties jointly owed $39,000 to CFS for a consolidated student loan taken out during the marriage that served to consolidate loans that both Amanda and David had incurred. The parties had agreed that David would be responsible for paying 60% of this consolidated

loan and Amanda would pay 40%, meaning that David and Amanda would each pay $23,400 and $15,600 respectively. There were also two credit card debts of $1,000 and $3,000 that the parties were ordered to pay.

{¶6} In 2010, Amanda appealed this decision, raising three assignments of error, and David filed a cross appeal, setting forth six assignments of error. *See, Collins v. Collins*, 3d Dist. No. 9–10–53, 2011-Ohio-2339, affirmed in part and reversed in part (hereinafter, "*Collins I*"). This Court found merit in some of Amanda and David's assignments of error and remanded with the following instructions.

> In summation, we reverse this matter for the trial court's failure to (1) restore Amanda to her prior name; (2) properly calculate child support based upon the evidence presented as to David's actual income; (3) determine the date of termination of the marriage; (4) explain why each party was ordered to pay the credit card debts that were in the other party's name or to order the parties to be responsible for the credit card debt incurred in each party's respective name; (5) explain the valuation placed on the 2000 Ford Explorer; (6) explain the division of the student loans obligations between the parties; and (7) either distribute the marital property/debt equally or explain how the significant discrepancy in the distribution is, nevertheless, equitable. In addition, as previously noted, upon remand the trial court should also correct its error in unilaterally modifying a portion of the shared parenting plan by following the mandates of R.C. 3109.04. *Id.* at ¶48.

{¶7} Without holding any further hearings, the family court reviewed the record and filed its judgment entry on June 29, 2011, addressing the issues raised

by this Court. David now appeals this order, raising the following three assignments of error.

**First Assignment of Error**

**The family court erred to the prejudice of David by determining Amanda's child support obligation to be $123.73.**

**Second Assignment of Error**

**The family court erred to David's prejudice by changing the valuation of the 1995 Ford Explorer despite the fact that neither party had assigned that vehicle's valuation as an error on appeal.**

**Third Assignment of Error**

**The family court erred to David's prejudice by dividing the marital estate inequitably and unequally.**

*First Assignment of Error—Income/Child Support*

{¶8} In making the determination that Amanda was obligated to pay $123.73 child support to David, the family court entered $39,689 for Amanda's annual gross income and $27,248 for David's annual gross income on the child support worksheet. In our previous review, we found that the family court correctly listed Amanda's gross income based upon her 2009 W-2, but we did not find sufficient support for the family court's determination as to David's income. *Collins I* at ¶ 20. Upon remand, the family court explained that it based the computation of David's income upon his testimony that he earned $13.10 per hour

at his full-time employment with the grounds maintenance division of OSU-Marion. (*See* Tr. at p. 26 and Defendant's Ex. 21, paystubs). After explaining its calculations, the court ordered that child support would remain as previously ordered.

{¶9} David asserts that the family court abused its discretion because it based Amanda's income on her 2009 W-2, but his income was based on his testimony as to his salary in April of 2010, instead of using "$22,277.36" as his income "as established by his 2009 W-2." (Appellant's Brief, p. 7.) David complains that the court's computations were "arbitrary and inequitable" by using Amanda's income as a teacher from 2009. He argues that the court should have projected her income for 2010, "which would have included a 15% raise during the school year beginning in September, 2010," according to Amanda's testimony. (*Id.*)

{¶10} Pursuant to R.C. 3119.02, a court or child-support-enforcement agency must calculate the amount of a child support obligation according to the schedules and worksheets provided in R.C. 3119.02 to 3119.24. The family court may deviate from the amount determined by using the appropriate worksheet only if after considering the factors and criteria set forth in R.C. 3119.23, it finds that the amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. The applicable worksheet for this case is found in

R.C. 3119.022, entitled "Child Support Computation Worksheet for Sole Residential Parent or Shared Parenting Order," because the family court ordered shared parenting. "Gross income" is defined as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable." R .C. 3119.01(C)(7).

{¶11} David's arguments fail on several points. First, his 2009 W-2 lists his total wages as over $25,000, *not* $22,277, which only represents his federal taxable income. Furthermore, even the $25,000 figure does not appear to be accurate, as his paystub from December 4, 2009, lists his wages as $13.10 per hour, for a forty-hour week, and lists his total year-to-date earnings as of early December as $25,666.17. (Def.'s Ex. 21.) It is evident that $13.10 per hour was his salary in 2009 as well as 2010. Based upon these figures in the record, along with David's testimony that he earned $13.10 per hour, we do not find any error in the family court's computation of David's gross income.

{¶12} In his previous appeal, David raised the issue concerning the inclusion of Amanda's potential salary increase. This Court found that the family court would have been engaging in speculation as to her future earnings and held that "the trial court did not err in relying upon the evidence actually before it to determine Amanda's gross income." *Collins I* at ¶ 21. Therefore, this issue is barred by res judicata. Furthermore, the record also shows that David testified that

he was due to receive a salary increase on July 1, 2010. By not engaging in speculation and disregarding *both* parties' potential, but not yet realized, 2010 salary increases, the family court was completely consistent in its calculation of their gross incomes.

{¶13} We find no error in the family court's computations of David's and Amanda's gross incomes, which are fully supported by the evidence in the record. The first assignment of error is overruled.

*Second Assignment of Error –Valuation of Vehicles*

{¶14} The parties had agreed that they would each keep the vehicle that they were currently driving. In the original judgment entry, for purposes of valuation and the division of property, the family court awarded Amanda the 2000 Ford explorer "valued at $3,850.00 and debt on same" and it awarded David the 1995 Ford Explorer "valued at $1,950.00" (with no outstanding debt). (Aug. 26, 2010 J.E.)

{¶15} In *Collins I*, we found these valuations to be incorrect because there was testimony from Amanda that the 2000 Explorer was valued "in the $5,000.00 range" and David testified that the Kelley Blue Book showed that the 2000 Explorer was valued at $5,495.00. *Collins I* at ¶ 42. David also supported his testimony with a Blue Book website printout, admitted as Defendant's Exhibit 7. We found that the family court's incorrect evaluation left a discrepancy in the

-8-

division of assets and debts, and remanded with instructions for the division of property to be "based upon accurate values of that property * * *." *Id.* at ¶ 47. The family court corrected this error in the June 29, 2011 judgment entry, stating the following:

> [Amanda] was Ordered to retain the 2000 Ford Explorer valued at $5,495.00, with an outstanding debt on same to Citigroup of $768.00 for a net value of $4,727.00. [David] was Ordered to retain the 1995 Ford Explorer valued at $2,500.00.

{¶16} In his second assignment of error, David agrees that the family court properly corrected the wrong valuation assigned to the 2000 Explorer. However, he complains that neither party had assigned the 1995 Explorer's valuation of $1,950 as an error and that the family court abused its discretion by changing this finding when this Court did not order a change in the 1995 vehicle's valuation.

{¶17} We do not find any basis for David's argument, as our previous opinion clearly directed the trial court to base the property divisions "upon accurate values" of the property. *Collins I* at ¶ 47. The record contains considerable evidence that the correct valuation of the 1995 Explorer was approximately $2,500. David's Pre-Trial Statement lists the value of the 1995 vehicle as $2,500; the Kelly Blue Book printout for the 1995 Explorer, admitted as Defendant's Exhibit 8, lists its value as $2,975 (Tr. p. 103); David's sworn affidavit of November 2009 lists the 1995 Explorer with a value of $3,000;

Amanda's trial testimony stated that she thought the vehicle's value was $2,500 (Tr. p. 64); and, when asked what his opinion was for the value of the 1995 Explorer, David testified that "$2,500 is an accurate statement" (Tr. p. 103).

{¶18} For whatever reason, the trial court mistakenly used incorrect numbers for the valuation of both vehicles in the original judgment entry. The trial court was directed on remand to utilize the correct valuations in order to effectuate an equal or equitable property division. The trial court had the jurisdiction to correct all of the inaccuracies in the original judgment entry. To have utilized a clearly erroneous valuation for the 1995 Explorer would have been inconsistent and incorrect. David's second assignment of error is overruled.

*Third Assignment of Error – Equitable Property Division*

{¶19} In *Collins I*, this Court directed the family court to "explain the division of the student loans obligations between the parties; and * * * either distribute the marital property/debt equally or explain how the significant discrepancy in the distribution is, nevertheless, equitable." *Collins I* at ¶ 48. In the new judgment entry, the trial court explained why it assigned David the entire balance of the mortgage, along with awarding him the house, and it explained why it made David responsible for 60% of the consolidated student loan. After providing the required explanation, the family court stated that it had considered all of the relevant factors as set out in the Revised Code and concluded that the

"assignment of assets and indebtedness as contained herein is an equitable division of same pursuant to Ohio Revised Code Section 3105.171(B)." (6/29/11 J.E., p. 4)

{¶20} In this third assignment of error, David claims that the property division was still inequitable. He asserts that he never agreed to assume the responsibility for the larger portions of the debts without it being taken into account in the property distribution, and that Amanda should pay him $8,969 in order to effectuate an equal division of the marital property.

{¶21} The Ohio Revised Code requires a trial court to "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). The court is then required to "divide the marital and separate property equitably between the spouses." *Id*. The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1).

{¶22} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1982), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597

(1989). An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶23} In the June 29, 2010 Judgment Entry, the trial court stated the following concerning the allocation of the house and mortgage to David:

> Although the Court accepted the Marion County Auditor assessed value for the marital residence of $78,370.00, which was agreed by the parties, no formal appraisal of same was conducted. In addition, both parties agreed the approximated indebtedness owed on the marital residence was $83,000.00 *which [David] was willing to assume to keep the real estate and he did not request any credit for his assumption of this joint marital debt.* Both parties remain obligated on the original mortgage debt to Fifth Third Bank, and the Court finds assignment of the entire mortgage balance to [David] is equitable based upon his interest in retaining the residence and his lack of any objection to same. The Court is unable to speculate whether [David] will be able to refinance the mortgage debt, and thereby eliminate [Amanda's responsibility to repay same, whether [Amanda] may ultimately be held responsible for this debt by the mortgagee*, or whether the accepted value of the marital residence is even accurate*. (Emphasis added, J.E., p. 4)

David now disputes that he was willing to assume the debt without any set-off credit for it.

{¶24} The parties purchased their home in 2004 for $84,000. A few years later they refinanced the home, and the testimony established that there was currently an outstanding balance of approximately $83,643 on the mortgage. No appraisal was done on the property. The only valuation discernible from the

record was a copy of the Marion County Auditor's valuation of the property at $78,370. There was some testimony by each of the parties as to the value of the home, but much of that was not transcribed and marked as "inaudible."[1] (*See, e.g.*, Tr. at p. 58-59 and 102-103).

**{¶25}** At the conclusion of the hearing in June of 2010, the family court noted that there was no clear consensus as to what the parties wished to do with the marital home.

> The Court: Okay. I have one question that both of you need to answer right now. What do you want to do with this house? Because if I don't get one of you asking for it, I'm going to order it be sold. I have no other choice. I just can't leave the biggest asset or obligation out there subject to no one asking what their position is on it. So either it's gonna – one of you is going to take it *and assume whatever I feel is appropriate as far as the financial responsibility for it*, or I'm going to order it be sold for whatever price it brings and assign whatever equity or proceeds would be appropriate under the circumstances. So I need to know that aspect. * * *
>
> Amanda: I have no intention of living in it.
>
> The Court: All right.
>
> David: I will keep it, Your Honor.

(Emphasis added, Tr. pp. 133-134)

[1] The transcription, done from a tape recording, contained numerous places where the testimony was not transcribed and was marked as "inaudible." No supplementation of the incomplete transcription was made, as provided for in App.R.9(C) and (D).

{¶26} The testimony above shows that David was willing to keep the house along with whatever financial responsibility for it that the trial court felt was appropriate. Although David contends that it was unfair to assign him the approximately $5,000 in negative equity in the home (if the auditor's valuation was accurate), the record shows that David agreed to accept the benefits of the owning the house, along with its liabilities. Amanda had no desire to keep the house, so it was David's choice not to have it sold and settle the financial ramifications at that time. And, there was also testimony from Amanda that she had been paying thousands of dollars toward the mortgage and utility payments for the home since the previous October or November, even though she had not been living in the house nor obtaining any benefit from it. (Tr. p. 77, where Amanda testified that there was "$3,908.50 that was going toward the mortgage on a house that I didn't have access to * * *.")

{¶27} Furthermore, the comments by the trial court in the judgment entry indicated that it was not completely convinced that the auditor's valuation was accurate. The record indicates that there was testimony and discussion concerning the value of the property, but it was "inaudible." In the absence of a complete transcript of the proceedings, a statement of the evidence pursuant to App.R. 9(C), or an agreed statement pursuant to App.R. 9(D), an appellate court "has no alternative but to indulge the presumption of the regularity of the proceedings and

-14-

the validity of the judgment in the trial court." *Tyler v. Tyler*, 3d Dist. No. 9-88-50, 1990 WL 97662 (Jul. 16, 1990), quoting *Ostander v. Parker-Fallis Insulation Co., Inc.*, 29 Ohio St.2d 72, 74, 278 N.E.2d 363 (1972); *Beer v. Beer*, 10th Dist. No. 04AP-93, 2004-Ohio-4559, ¶ 9. Based on all of the above, we cannot say that the trial court's decision concerning the property and its associated debt was unreasonable, arbitrary, or unconscionable.

{¶28} David also complains about being required to pay for 60% of the approximate $39,000 consolidated student loan. However, there was considerable testimony indicating the majority of the consolidated loan was used to pay for loans incurred exclusively for David's schooling. Both parties agreed that Amanda only had loans covering about two years out of the two-and-a-half years it took her to complete her education, while David took out loans covering about three-and-a-half to four years of the five years he attended college. (Tr. pp. 94-95 and 100) Amanda had records for her three federal student loans, originally totaling $6,000, which she testified were incorporated into the consolidated loan. (Tr. p. 93) David testified that her share was higher than that, but did not provide any figure or records to support his testimony. Amanda testified that she could not provide additional records because David had taken care of the entire consolidation process and she did not have access to his passwords to obtain any records from CFS. (Tr. p. 90)

{¶29} Although there was more testimony concerning the student loans, and the parties' prior agreement as to how they arrived at their respective payments towards the loan prior to the hearing, much of that testimony was also marked as "inaudible." Multiple portions of testimony concerning the student loans were marked as "inaudible" on pages: 86, 88, 90-92, 98-100 of the transcript. As stated above, without a complete record, we must presume that the findings of the fact-finder are correct, as the fact-finder based the decision upon hearing all of the testimony at the time of the hearing. Given the testimony that was in the record, along with the presumption of regularity as to the trial court's findings concerning the missing testimony, we again cannot find that the trial court's decision concerning the division of the consolidated student loan was unreasonable, arbitrary, or unconscionable.

{¶30} Based on the above, we do not find the trial court abused its discretion in its division of property and debts, and its explanation as to why it was equitable. David's third assignment of error is overruled.

{¶31} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the family court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**

Case No. 9-11-32