[Cite as *Shamblin v. Leal*, 2012-Ohio-2667.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY   COUNTY**

MARIA SHAMBLIN                    :
                                 :        Appellate Case No. 24742
         Plaintiff-Appellee      :
                                 :        Trial Court Case No. 08-CV-8538
v.                               :
                                 :
FERDINAND LEAL                   :        (Civil Appeal from Common Pleas
                                 :         Court, Domestic Relations)
         Defendant-Appellant     :
                                 :
                        · · · · · · · · · · ·

O P I N I O N

Rendered on the 15th day of June, 2012.

· · · · · · · · · · ·

PATRICK J. CONBOY, II, Atty. Reg. #0070073, 5613 Brandt Pike Huber Heights, Ohio 45424
         Attorney for Plaintiff-Appellee

KEITH A. FRICKER, Atty. Reg. #0037355, 7460 Brandt Pike, Huber Heights, Ohio 45424
         Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, J.

{¶ 1}   Defendant-appellant Ferdinand Leal appeals from a judgment rendered against him in the amount of $22,220.93.   He contends that the judgment is against the manifest weight of the evidence.

{¶ 2}   This cause of action was made up on plaintiff-appellee Maria

Shamblin's complaint, Leal's counterclaim, and their respective answers. It was tried to the bench, without a jury. The trial court rendered findings of fact and conclusions of law, but we have not been provided with a transcript of the trial. The record on appeal does not support Leal's contention that the judgment against him is against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. The Facts Found by the Trial Court

{¶ 3} The trial court made the following findings of fact:

The testimony reveals that the Plaintiff, Maria Shamblin (Plaintiff) and the Defendant, Ferdinand Leal (Defendant) met in 2000 when both were in other relationships. They dated off and on beginning in 2004, with the relationship ending in 2008. During the course of the relationship, [Shamblin] and [Leal] decided to move in together.

In 2005, [Leal] was hired by the City of Dayton as a police officer. The Court takes judicial notice of City's residency rule and its requirement that employees live within the City's boundaries. [Leal] previously lived in Miami County Ohio, however toward the end of 2005 [Leal] bought a house located in the City of Dayton so as to comply with Dayton's residency rule. The purchase price of the house was $159,000.00. [Shamblin] gave [Leal] $33,000.00 in cash to be used toward the down payment and closing costs. [Shamblin] was of the belief that when the two got married, her name would be put on the deed.

The money that [Shamblin] gave to [Leal] came from a cache of money that

[Shamblin] and her mother kept in a safe or "firebox." Money from this stash was used during the course of the relationship to improve or maintain the property. Those improvements included putting on a deck, building a storage shed, and repairing the air conditioner. In addition to the house down payment of $33,000.00 [Shamblin] loaned [Leal] the following sums of money: 1) $4,800.00 for a new deck. Of this amount [Leal] used $4,000.00 to construct the deck and kept the remaining $800.00; 2) $1603.93 for a storage shed; and 3) $817.00 for air conditioning repair.

The evidence also indicates that [Leal] took $10,000.00 in cash from the safe placing the money in his personal bank account at a local credit union. The record also reflects that [Shamblin] gave [Leal] money from her checking account to replace a computer that got a virus alledgedly as a result of [Shamblin's] use. [Shamblin] was to get possession of the damaged computer, but she never received the computer. [Leal] spent $1,300.00 repairing the computer and kept the computer and the remaining $700.

[Shamblin] also claims to be owed $150.00 for a retainer rock, $180.00 for window blinds, $109.00 for alleged porn website charges made on [Shamblin's] credit card and $346.08 for a camera purchased as a gift for [Leal] by [Shamblin]. [Shamblin] provided receipts for $4,766.93 of the $55,006.01 that she claims to be owed. These receipts included: the air conditioner ($817.00), the camera ($346.08), the shed ($1,603.93), and a copy of a check written on her personal bank account, payable to [Leal], with "computer" written in the notation line ($2,000.00). [Shamblin] stated that she does not have receipts for the other purchases and/or loans because she trusted [Leal]. [Shamblin] seeks a total of $55,006.01 in damages.

The evidence further revealed via the parties' joint exhibit that [Shamblin] had been reimbursed for $30,000.00 of the down payment.   The joint exhibit provided as follows:

"This letter is to serve as an agreement between Ferdinand Leal and Maria A. Shamblin.   Ferdinand Leal agree (sic) to pay Maria A. Shamblin $35,000.00 in exchange for her vacating my residence at 6346 Harvest Meadow Dr. not (sic) later than April 21, 2008 at 6pm, removal of her personal property including flat screen television, some curtains, refrigerator and stove from the residence, agreement to file no civil litigation in the future. Upon Compliance of this agreement, payment of $30,000.00 will be made by certified or cashier's check no later than May 21, 2008.   The $5,000.00 will be paid in installment [sic] of $100.00 per month."

The joint exhibit, whose contents both parties acknowledged, stated that [Leal] owed [Shamblin] $35,000.00.   Both acknowledged that of that amount, [Leal] had repaid $30,000.00 via a certified check and that of the remaining $5000.00, [Leal] would repay in $100.00 increments.   Both [Shamblin] and [Leal] acknowledge that [Leal] is in default of the remaining $5000.00.

Upon moving in together, [Leal] paid the household bills. [Shamblin] did not contribute to the mortgage, the insurance, the utilities, food, or maintenance and upkeep. Based on [Leal's] testimony, the monthly household expenses were approximately $1600.00 per month.   These expenditures included the mortgage plus the other household expenses such as phone, cable, water, sewer, electric, food, etc.

[Leal] argues that he paid for the deck, the retainer rock and the curtains/blinds but he could provide no receipt for those expenditures.   Further, [Leal] denied the accusation that he

had made porn website charges to [Shamblin's] credit card.

After [Shamblin] left the house, [Leal] stated that he discovered that his power tools were missing from a tool box. He stated that he "loved" those particular tools and placed a value of $5000.00 on them. He stated that he believed [Shamblin] had taken those tools because there was no evidence that a robbery or burglary took place. [Shamblin] denied taking the power tools. Rather, [Shamblin] stated that [Leal's] ex-wife had taken the tools during their divorce and had given them to her family members.

[Leal] also claimed that [Shamblin] took 15 rose bushes and lilies that he had purchased and planted on the property as landscaping. [Shamblin] confirmed that she had dug up and given away the plants, however she claimed that she had paid for the plants. There were no receipts presented for any of the plants by either party nor was any evidence presented as to the amount of damages due to the removal of the plants.

During dissolution of the parties['] relationship, [Shamblin] threatened to report him to his employer in an attempt to cause him to lose his job. [Shamblin] also made statements, orally and in writing, to their neighbors about [Leal], as well as to [Leal's] family in California.

{¶ 4} In her complaint, Shamblin made out a cause of action against Leal for unjust enrichment. In its conclusions of law concerning this claim, the trial court made additional findings of fact:

Considering the credibility of the witnesses, the exhibits, testimony and all the facts and circumstances in evidence, it is reasonable to conclude that [Leal] was unjustly enriched in the amount of $52,220.93. This amount reflects the following:

$33,000.00 Downpayment on the house

$4,800.00 Deck

$1,603.93 Storage Shed

$817.00 Air Conditioner

$10,000.00 Cash taken from safe and placed in [Leal's] account

$2,000.00 Computer

$52,220.93

[Leal] has paid [Shamblin] $30,000.00. Therefore, [Shamblin] is owed $22,220.93. As to the retaining rock ($150.00 approximate), window treatments ($180.00 approximate), and porn website charges ($109.00 approximate) the court finds that [Shamblin] failed to sufficiently prove her claims. As to the camera, the Court finds that the camera was a gift purchased by [Shamblin] for [Leal]. Further, the Court finds that there was insufficient evidence to definitively show that there was any type of agreement between the parties as to the sharing of household expenses. Therefore the Court declines to take any deductions from the amount owed to [Shamblin].

{¶ 5} One of the claims Leal made out against Shamblin in his counterclaim was for breach of contract. Concerning this claim, the trial court made additional findings of fact in its conclusions of law:

Considering the credibility of the witnesses, the exhibits, testimony and all the facts and circumstances in evidence, it is reasonable for the Court to conclude that [Leal's] Breach of Contract claim must fail. The April 24, 2008, Agreement between

the parties states as follows: [here the trial court quoted again from the letter agreement quoted in paragraph 3 of this opinion].

This agreement was signed by the parties and notarized on April 24, 2008. Both parties were still living at the residence when the agreement was signed. The Agreement states that [Shamblin] was to be out of the residence by April 21, 2008. The Agreement is void on its face. [Leal's] claim for breach of contract must fail.

{¶ 6} Another claim Leal made out in his counterclaim was for defamation. Concerning this claim, the trial court made additional findings of fact in its conclusions of law:

Considering the credibility of the witnesses, the exhibits, testimony and all the facts and circumstances in evidence, it is reasonable for the Court to conclude that there is insufficient evidence to prove a claim for defamation. While [Leal] offered evidence of the letters sent to his family and neighbors he failed to show that he was damaged. [Leal] stated that he felt the neighbors treated him differently. However this is not enough to sustain a defamation claim.

{¶ 7} The final claim Leal made out in his counterclaim was for conversion. Concerning this claim, the trial court made additional findings of fact in its conclusions of law:

Other than the conflicting testimony of the parties there was no other evidence presented in regard to either the tools or the plants. Essentially this is a "he-said, she-said" issue. Considering the credibility of the witnesses, the exhibits, testimony and all the facts and circumstances in evidence, it is reasonable for the Court to find

that there is insufficient evidence to support [Leal's] conversion claim in regard to the power tools and plants.

{¶ 8}     From the judgment rendered against him, Leal appeals.


## II.   Without a Transcript of the Trial, the Record Fails to Demonstrate that the Judgment is Against the Manifest Weight of the Evidence

{¶ 9}     Leal's sole assignment of error is as follows:

{¶ 10}   "THE TRIAL COURT ERRED IN GRANTING THE PLAINTIFF A JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 11}   We have not been provided with a transcript of the evidence presented at this bench trial.   Without a transcript of the evidence, we are unable to overcome the presumption of regularity in the proceedings in the trial court.   *Collins v. Collins*, 3d Dist. Marion No. 9-11-32, 2012-Ohio-749, ¶ 27, 29.

{¶ 12}   The only fault we might possibly find with the trial court's legal reasoning would concern its conclusion that the April 24, 2008 agreement between the parties was void because it called for Shamblin to move out of the residence by April 21, 2008, a deadline that had already expired when the agreement was signed.   The essential purpose of the move-out requirement might nevetheless have been satisfied by Shamblin's having moved out within a reasonable time after signing the agreement, without the necessity of voiding the agreement.

{¶ 13}   However, any error in the trial court's reasoning in this regard cannot have prejudiced Leal.   In essence, the April 24, 2008 written agreement between the parties constituted a recognition that Leal owed Shamblin $35,000 that she had loaned him for the

down payment on the residence, which he was to repay her on the condition that she move out.

There is no suggestion in the agreement that it was concerned with other obligations between the parties. As reflected in that part of the trial court's conclusion of law quoted in paragraph 4 of this opinion, the trial court actually charged Leal with an obligation of only $33,000 for the repayment of Shamblin's loan for the down payment, less than the amount the parties recited in the April 24, 2008 written agreement. Therefore, any error on the part of the trial court in failing to give recognition to the April 24, 2008 agreement cannot have prejudiced Leal, since he was treated by the trial court more favorably than called for in that agreement.

{¶ 14} In any event, Leal's sole assignment of error – that the judgment of the trial court is against the manifest weight of the evidence – cannot be supported by the record of this appeal, which does not contain a transcript of the trial. Therefore, Leal's sole assignment of error is overruled.

### III. Conclusion

{¶ 15} Leal's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Patrick J. Conboy, II
Keith A. Fricker
Hon. Frances E. McGee