[Cite as *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

HUELSKAMP,

    APPELLEE,                               CASE NO. 2-09-21

    v.

HUELSKAMP,                             O P I N I O N

    APPELLANT.

---

**Appeal from Auglaize County Common Pleas Court
Domestic Relations Division
Trial Court No. 2007 DR 0217**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   December 28, 2009**

---

**APPEARANCES:**

    Rob C. Wiesenmayer II, for appellee**.**

    William E. Huber, for appellant.

WILLAMOWSKI, Judge.

{¶ 1} Defendant-appellant, Timothy Huelskamp, appeals the judgment of the Auglaize County Court of Common Pleas, Domestic Relations Division, granting a divorce from plaintiff-appellee, Amy Huelskamp. Timothy contends that the trial court erred in dividing the marital and separate property, in determining the value of the marital property, in calculating child support, and in awarding custody of the children to Amy. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶ 2} Timothy and Amy were married on May 20, 2000. Two children were born as issue of the marriage. The parties separated in April 2007, and Amy filed for divorce in November 2007. Trial was first set for September 30, 2008, but was rescheduled for May 27 and 28, 2009, after the trial court ordered the joinder of third parties[1] who shared property interests in the parties' real estate and hog-finishing business. The trial court granted the divorce and issued its final judgment entry on June 30, 2009.

{¶ 3} At trial, the parties stipulated that the grounds for the divorce would be incompatibility and that they had reached an agreement concerning the division of personal property. The majority of the testimony at the trial concerned the ownership and valuation of the residential property; the operation, ownership, and

---

[1] Timothy owned real estate jointly with his parents, and he had a business partnership with his brother.

valuation of the hog-finishing business; and parenting and custody issues. There was also testimony regarding the parties' incomes, assets, vehicles, and debts, and the 2008 income tax return and refunds.

{¶ 4} Timothy and Amy have two children, Dalton, age 9, and Gabrielle, age 5. In 2008, both parties originally filed shared-parenting plans with differing divisions of time. However, at trial, Amy requested that she be named the residential parent and that the visitation schedule that had been in effect for the past year be continued. There was considerable testimony indicating that the parties' relationship with each other was very acrimonious. The guardian ad litem recommended shared parenting, but suggested that the children should be exchanged in a public location to avoid confrontation between the parents. The trial court rejected any shared-parenting plan, due to the parties' inability to cooperate, and designated Amy as the residential parent and legal custodian. The trial court granted Timothy expanded visitation times, in excess of the standard orders, and ordered him to pay child support, with credit given for the extra time that the children would be spending with him.

{¶ 5} When the parties married in 2000, they lived in a very old and "dilapidated" house on 20 acres of land that had been owned by Timothy's mother and father. In 1990, prior to the marriage, Timothy purchased an undivided half interest in this property from his parents. In late 2001 and early 2002, the parties

demolished the old home and built a new residence on the property, with Timothy acting as general contractor and doing much of the construction work. Timothy and Amy obtained a mortgage in 2002 for $120,000 to cover the expenses involved in building the home.

{¶ 6} The trial court found that Timothy's half interest in the land was his separate property prior to the marriage and awarded that to him. The trial court determined that the house itself was built during the marriage and was marital property. The court awarded possession of the house to Timothy, along with responsibility for the mortgage. However, there was considerable conflicting testimony in trying to determine the marital valuation of the home, which was complicated because the value of the house needed to be calculated independent of the land. The trial court did not find either of the parties' appraisals credible and valued the property in accordance with the county tax-appraisal record, which separated the land and building values and was utilized by both appraisers in coming to their conclusions. The tax appraisal put the value of the buildings[2] on the property at $145,770, leaving a marital equity of $40,130.40.

{¶ 7} Another area of contention involved the hog-finishing-business partnership that Timothy and his brother commenced in 2005.[3] The business

---

[2] Although there were other outbuildings on the property, the testimony indicated that the house itself was the only building of value as the others were either too old or in a poor location to be worth anything.

[3] Amy and Timothy's brother's wife were also originally on the note and financially liable for the building of the barn and the purchase of the equipment.

purchased equipment and constructed a hog barn on acreage owned by Timothy's father. The brothers raise hogs under a contract with a company that provides the piglets and feed. In return, they raise the hogs to maturity and are paid monthly according to the contract. The partnership's income tax returns show a gross profit but indicate that the business is operating at a net loss after deducting depreciation and expenses. Amy presented the testimony of a CPA expert witness who found that the value of Timothy's share of the hog-finishing partnership was $34,870. Timothy did not present any expert testimony concerning the valuation of the business. The trial court found that the expert's valuation was credible and ordered that the hog-finishing business should be awarded to Timothy, free and clear of any claim of Amy. However, the court found that this was a business that was begun during the marriage and was entirely marital property subject to division.

{¶ 8} Other marital property divisions included Amy's 401(k) account, the 2008 tax refunds, and Timothy's truck. Amy was permitted to retain her retirement account and the tax refund, and Timothy was awarded his truck. The trial court enumerated the following awards of the parties' marital property:

|  |  |  |
|---|---|---|
| Amy: | 401(k) | $13,281.00 |
|  | Tax Refund | $ 1,978.00 |
|  | Total: | $15,259.00 |
|  |  |  |
| Timothy: | House | $40,130.40 |
|  | Business | $34,870.00 |

| | |
|---|---|
| Truck | $ 600.00 |
| Total: | $75,600.40 |

Based upon the trial court's allotment of the marital assets and equity, Timothy received $60,341.40 more in marital property than Amy. In order to equalize the marital property division, the trial court ordered Timothy to pay Amy her share, $30,170.70, within 90 days.

{¶ 9} It is from this judgment that Timothy appeals, presenting the following eight assignments of error for our review.

### First Assignment of Error

The Trial Court erred and abused his [sic] discretion in determining what was marital and what was separate property

### Second Assignment of Error

The Trial Court erred and abused it's [sic] discretion in determining the value of the residential real estate.

### Third Assignment of Error

The Trial Court erred and abused it's [sic] discretion in not giving [Timothy] credit for the contribution of his separate property for the construction of the home.

### Fourth Assignment of Error

The Trial Court erred and abused it's [sic] discretion in it's [sic] valuation of the partnership business.

### Fifth Assignment of Error

The Trial Court erred and abused it's [sic] discretion in allocating and dividing the 2008 income tax refund.

**Sixth Assignment of Error**

The Trial Court erred and abused it's [sic] discretion by failing to consider the tax consequences that resulted in dividing and awarding marital property.

**Seventh Assignment of Error**

The Trial Court erred and abused it's [sic] discretion in determining that the depreciation should be considered income in calculating support.

**Eighth Assignment of Error**

The Trial Court erred and committed an abuse of discretion in finding that the shared parenting plan is not in the best interest of the minor children.

{¶ 10} Several of the assignments of error involve similar legal concepts. Therefore, in order to facilitate the review, we elect to address some of the assignments of error together and out of order.

**First, Third, and Fifth Assignments of Error**

{¶ 11} In these three assignments of error, Timothy asserts that the trial court erred in determining what was marital and separate property, and in dividing the marital and separate property. Timothy contends that he did not receive the correct allocation for his share of the parties' residence, for his contributions to the construction of the residence, and from the parties' 2008 income tax refunds.

{¶ 12} It is well settled that trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293, paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 15, citing *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. The term "abuse of discretion" means more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 13} A trial court is charged with the duty of distinguishing between marital property and separate property in accordance with the definitions set forth in R.C. 3105.171(A). *Lust v. Lust*, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶ 12. Marital property includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 160, 694 N.E.2d 989.

{¶ 14} Separate property is defined by R.C. 3105.171(A)(6)(a) and includes any real or personal property, or interest in such, that was acquired by one spouse prior to the date of the marriage. *Neville v. Neville*, 3d Dist. No. 9-08-37, 2009-

Ohio-3817, ¶ 11. The commingling of separate property with other property does not necessarily destroy the identity of the separate property, except when the separate property is not traceable. R.C. 3105.171(A)(6)(b). Therefore, traceability is the main issue in determining whether separate property has become marital property due to commingling. *Earnest v. Earnest*, 151 Ohio App.3d 682, 2003-Ohio-704, 785 N.E.2d 766, ¶ 38, citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. Separate property can be converted to marital property if one spouse grants the other spouse an interest in the property. *Jackson v. Jackson,* 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 7. The general rule with regard to separate property is that the trial court must disburse a spouse's separate property to that spouse. R.C. 3105.171(D). Nevertheless, the trial court has broad discretion in dividing property equitably in a divorce. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 319, 432 N.E.2d 183.

{¶ 15} The determination whether property is marital or separate is reviewed under the manifest-weight-of-the-evidence standard. *Gosser v. Gosser*, 11th Dist. No. 2006-T-0029, 2007-Ohio-3201, ¶ 29. A trial court's judgment will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. This highly deferential standard of review permits the affirmation of the trial court's judgment

if there is even "some" evidence to support the court's finding. *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 11.

{¶ 16} In his first assignment of error, Timothy complains that the trial court did not make an equitable division of the land (owned jointly by Timothy and his parents) and the house (built by Timothy and Amy during their marriage). It appears that he is arguing that the value of the land and the value of the house were intertwined and that requiring Timothy to pay Amy for her half of the equity in the house was inequitable.

{¶ 17} The trial court arrived at the value of the house independent of the 20 acres of land on which it was situated. Timothy's ownership of the land was determined to be his premarital separate property and he was permitted to retain his undivided interest in the land along with his parents. The house itself was built by Timothy and Amy during the marriage and was determined to be marital property. At the time the house was constructed, Timothy was aware of the joint ownership of the land it was being built upon. After subtracting the mortgage[4] from the value of the house alone, the trial court determined the amount of marital equity. Timothy was awarded the house and was ordered to pay Amy for her half

---

[4] At trial, Timothy testified that he and Amy took out a mortgage on the home, and the monies were used to pay for the construction of the residence. In his appellate brief, Timothy states that "[t]here is a mortgage on the property secured by a note which covers the entire property, not just the residential structure." Given this argument, if a part of the mortgage is applicable to the *land*, then the amount of the mortgage that should be subtracted from the value of the *house* would be reduced. Therefore, according to the argument that Timothy appears to be making, the marital equity in the home would be greater and the

-10-

of the marital equity in the house to equalize the distribution. The trial court's division was an essentially equal, dollar-for-dollar distribution of the marital asset. Finding no inequity in the trial court's division of the marital residence and land, we overrule Timothy's first assignment of error.

{¶ 18} In his third assignment of error, Timothy argues that the trial court erred by not giving him credit for the cost of the home's septic system, which he claims he paid for from his separate checking account. Timothy testified that he had a separate bank account from before the marriage, but he was unable to specify how much money was in this account before the marriage. He also testified that, during the marriage, he had used the account for depositing monies and paying bills. He did not provide any bank statements or records for this account, nor did he present any records showing the cost of the septic system or documentation that it was paid for with his separate funds.

{¶ 19} A party who wishes to have a particular asset classified as separate property has the burden of proving, by a preponderance of the evidence, that the asset is separate property. *Brandon v. Brandon*, 3d Dist. No. 10-08-13, 2009-Ohio-3818, ¶ 18; *Peck v. Peck*, 96 Ohio App.3d at 734. It was Timothy's responsibility to prove that the property existed prior to the marriage and that it

---

amount of money he would owe to Amy would be greater in order to equalize the distribution. We are unsure as to whether this is the point Timothy was trying to make.

was traceable. See *Guenther v. Guenther* (Oct. 19, 1994), 9th Dist. No. 2827, 1994 WL 577751.

{¶ 20} Timothy did not provide any evidence, other than his own very general testimony, concerning the money he claimed to be his premarital separate property. Furthermore, since the account was also used as a marital account, he could not establish that the funds were not commingled with other marital funds and the funds from the mortgage proceeds. Timothy did not meet his burden of proving the existence or traceability of this money. Timothy's third assignment of error is overruled.

{¶ 21} In the fifth assignment of error, Timothy claims that the trial court erred in allocating and dividing the 2008 state and federal income tax refunds. Although we do not agree with the calculations that Timothy set forth in his brief, our review of the record finds that the trial court's calculations did not result in an equal division of the 2008 income tax liabilities and refunds.

{¶ 22} The parties were living separately in 2008, and they asked their accountant to prepare their taxes in the manner that would achieve the greatest tax savings. The accountant determined that they would receive a maximum return if they utilized the "married filing separately" status and allowed Amy to claim both of the children on her separate return. As a result, Timothy owed $2,065 in taxes, and Amy received refunds of $6,021. In order to share equally in the tax benefits,

the accountant contemplated that each would pay half of Timothy's liability, or $1,032.50 each, and Amy would pay Timothy half of the refund, or $3,010.50, resulting in each party ending up with a net $1,978 "in [their] pocket."[5]   Instead of doing this, Amy paid Timothy's tax liability at the time it was due, and Timothy reimbursed her for $1,000, approximately one-half.   When Amy received the $6,021 tax refunds, she held it in escrow, waiting for the court to make a final determination as to the parties' property division.

{¶ 23} The trial court allowed Amy to retain all of the incometax refunds, which the court stated, "results in a net profit to [Amy] of $1,978."  The trial court then included that "net profit" of $1,978 in the marital-property calculations when equalizing the property division.

{¶ 24} Although it appears that it was the trial court's intention to equally distribute all of the marital property, including the 2008 tax refund, the court's calculation resulted in an unequal division of the tax refund.   The parties would have each realized a return of $1,978 *only if* Amy had paid Timothy the $3,010.50, as originally contemplated by their tax accountant.  She did not do this.  Instead, the parties split the tax liability between them, but Amy kept the entire refund. Therefore, the full amount of the $6,021 tax refund, less $32.50 extra Amy overpaid for Timothy's taxes due, or $5,988.50, should have been included as a

---

[5] These notes and calculations were taken from defendant's Exhibit A, which was a memo from the income tax preparer.   The main amounts calculated included federal and state income taxes; there were also de

marital asset in the trial court's recapitulation of assets prior to

---

minimus amounts for school and city taxes.

ordering the equalization payment.

{¶ 25} While a property division need not always be equal in order to be equitable, it appears that the trial court did intend to equally divide all the marital property and inadvertently failed to do so. Therefore, Timothy's fifth assignment of error is well taken and is sustained.

### Second and Fourth Assignments of Error

{¶ 26} In these assignments of error, Timothy states that the trial court erred in its valuation of the residential real estate and the hog-finishing business. He maintains that the trial court should have followed his appraiser's valuation for the residence, and that it should not have believed Amy's agricultural expert's valuation of the hog-finishing partnership.

{¶ 27} A trial court enjoys broad discretion in determining the value of a marital asset and is not required to adopt any particular method of valuation. *James v. James* (1995), 101 Ohio App.3d 668, 680, 656 N.E.2d 399. It is not an abuse of discretion when the trial court assigns value to real estate in an amount that is supported by competent, credible evidence. *Osting v. Osting*, 3d Dist. No. 1-03-88, 2004-Ohio-4159, ¶ 21. "[W]hen the parties present substantially different valuations of an asset," it may believe all, part, or none of any witness's testimony. *Covert v. Covert,* 4th Dist. No. 03CA778, 2004-Ohio-3534, ¶ 29. Furthermore, "[a] reviewing court should be guided by a presumption that the

findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 11, citing *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989.

{¶ 28} In his second assignment of error, Timothy states that the trial court was correct in finding that Amy's appraiser's methodology was flawed, but that it should have found that Timothy's appraiser's valuation was accurate. He also criticizes the trial court's use of the county property-tax records to determine the value of the real estate.

{¶ 29} Timothy and Amy presented two professional appraisers who used two different methods of valuation to arrive at their appraisals. Amy's appraiser found the value of the home along with a "hypothetical 2.5 acres of land" to be $195,000. He then subtracted the value of the land to come up with a value on the house of $165,000, leaving marital equity of $59,360.40, after subtracting the $105,639.60 mortgage balance. Timothy's appraiser utilized a "use value" approach to come up with a value on the house alone to be $135,000, resulting in a marital equity of $29,360.40 after subtracting the mortgage balance.

{¶ 30} The trial court rejected both appraisals, finding one was computed using a "fiction" and the other utilized "flawed" methodology. Instead, the trial

court valued the property in accordance with the county tax-appraisal record, which separated the land and building values and was utilized by both appraisers in coming to their conclusions. The tax appraisal valued the buildings on the property at $145,770, leaving a marital equity of $40,130.40.

{¶ 31} We find that the trial court's valuation of the marital residence was supported by competent and credible evidence and that its conclusion was not unreasonable, arbitrary, or unconscionable. The trial court's decision was based upon the county tax records that were admitted before the court with the appraisers' exhibits. The valuation fell within a range between Amy's higher appraisal and Timothy's lower appraisal, and no one presented any evidence that they had ever contested this valuation as being inaccurate. The trial court clearly articulated its reasons for rejecting both of the parties' appraisals. Timothy's appraiser himself admitted that in all of his many years of appraising homes, he had *never* before appraised a residence under a use-value methodology. He also acknowledged that he had no opinion as to the market value of the dwelling or the land. Timothy's second assignment of error is overruled.

{¶ 32} Timothy's fourth assignment of error asserts that the trial court erred when it adopted Amy's expert witness's valuation of the hog-finishing partnership owned in conjunction with Timothy's brother. Timothy claims that the expert's valuation was based upon flawed assumptions, especially concerning who owned

the building and whether they could expect the contract to be renewed in the future.

{¶ 33} Amy's expert, David Fortney, testified that he was a CPA with the firm of McCrate, DeLaet & Co. and he had extensive past experience in valuing agricultural operations, including hog-finishing businesses. Fortney was found by the court to be an expert witness in the area of "agriculture accounting," with no objections from the parties. He provided detailed testimony to the trial court setting forth the specific steps that he took to evaluate the hog-finishing business and also the evidence that he reviewed concerning the operation of the business. When questioned on cross-examination as to the accuracy of some of his assumptions, Fortney testified that his valuation would still be the same because it was based upon cash flow and expenses.

{¶ 34} In its decision, the trial court stated:

The Court finds Mr. Fortney's testimony to be credible and based on many years of experience with agricultural operations including hog finishing. The Court accepts his value of [Timothy's] portion of the business at $34,870 which is entirely marital subject to division.

{¶ 35} The trial court found Fortney to be a credible witness and found his methodology to be sound. More importantly, the trial court had no other evidence or expert testimony to rely upon other than the testimony and evidence presented by Fortney. Timothy did not present any expert testimony or reports in support of a different valuation. The trial court did not abuse its discretion in relying upon

Fortney's expert testimony in establishing the marital value of the hog-finishing partnership. Timothy's fourth assignment of error is overruled.

**Sixth Assignment of Error**

{¶ 36} In his sixth assignment of error, Timothy asserts that the trial court erred when it failed to consider the tax consequences concerning the division of the marital property. Specifically, he complains that it is impossible for him to obtain the $30,170.70 to pay Amy for her share of the marital property without suffering tax consequences for selling a capital asset. He claims that he would have to sell off part of the property or a portion of the hog-finishing business in order to raise the necessary cash, and that he would suffer negative tax consequences as a result.

{¶ 37} Tax consequences of property division may be proper considerations for the court, so long as those consequences are not speculative. *Fisher v. Fisher* (Mar. 22, 2002), 3d Dist. No. 7-01-17, citing *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201; R.C. 3105.171(F)(6). When the tax consequences are found to be speculative, a court need not consider them. See, e.g., *Thomas v. Thomas*, 171 Ohio App.3d 272, 2007-Ohio-2016, 870 N.E.2d 263, ¶ 6-11 (finding that tax consequences of a payment of $4.5 million to husband for his share of business were speculative because the trial court's order did not specifically require wife to sell half of the business); *Teaberry v. Teaberry*, 7th Dist. No. 07

MA 168, 2008-Ohio-3334, ¶ 39-40 (although husband did not have liquid assets to meet his obligation, he did hold substantial assets and might be able to obtain a loan); *Fergus v. Fergus* (1997), 117 Ohio App.3d 432, 436-37, 690 N.E.2d 949 (finding that the sale of an asset may result in tax consequences, but not consequences of any unusual nature).

{¶ 38} We find that Timothy's assertions as to the possibility of negative tax consequences are purely speculative. The trial court did not order the sale or transfer of any particular asset and, therefore, it did not affirmatively impose an order that would necessitate a taxable event. There may be options available to Timothy to raise the money other than through the sale of capital assets. Just recently (and contrary to the standing orders of the court not to modify finances), Timothy and his brother refinanced the partnership business. Also, Timothy now holds considerable equity in the marital residence and surrounding property. Even if the sale of an asset may be required, Timothy has failed to specify what, if any, tax consequences might result. The sixth assignment of error is not well taken.

### Seventh Assignment of Error

{¶ 39} In this assignment of error, Timothy argues that the trial court should not have included his federal income tax deductions for depreciation on his business as part of his income for purposes of child-support calculations. In calculating Timothy's child-support obligations, the trial court found that he had

earnings of $33,280 per year from his employment at Hume Supply. The trial court also noted that the hog-finishing business did not show any income but that Timothy depreciated $17,537 on his tax return, which was not an ordinary and necessary business expense under R.C. 3119.01(C)(9)(b). Therefore, the trial court calculated Timothy's child-support obligations based upon a gross income of $50,817.

{¶ 40} Depreciation is normally included in the calculation of gross income unless it is shown to be an ordinary and necessary cost of business. *Buening v. Buening*, 3d Dist. No. 10-08-04, 2008-Ohio-6579, ¶ 8; R.C. 3119.01(C)(9). Pursuant to R.C. 3119.01, gross income includes self-generated income for the purposes of child-support calculations and such income is defined as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses." R.C. 3119.01(C)(13). The same statute defines "ordinary and necessary expenses" as "actual cash items expended by the parent or the parent's business [including] depreciation expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(a). However, R.C. 3119.01(C)(9)(b) excludes "depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's

business" as ordinary and necessary expenses. *In re Sullivan*, 167 Ohio App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554, ¶ 22.

{¶ 41} In *Buening v. Buening*, the video-rental company's accountant testified that the depreciation of the establishment's video tapes was an ordinary and necessary cost of the business of renting the tapes to the consumer, and was not merely for income tax purposes. 2008-Ohio-6579 at ¶ 9-10. The business's financial statements included the depreciation of the video tapes, and then reflected the gross sales price as a capital gain after the tapes were sold. Id. at ¶ 9. This court held that the father's gross income should be reduced by the depreciation for the tapes because to "not allow the depreciation would be to ignore the necessary costs of doing business and to allow for the sale of items without considering the cost of obtaining those items that were subsequently sold." Id. at ¶ 10.

{¶ 42} However, in many cases, a company depreciates buildings and equipment that it owns solely for the purpose of reducing its income taxes. See, e.g., *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, ¶ 23 (the exclusion of depreciation deductions is designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended); *Combs v. Walsh*, 12th Dist. No. CA2005-07-198, 2006-Ohio-7026, ¶ 22 (income for child-support purposes is not equivalent to the parent's taxable income, and court did not

abuse its discretion by including rental business's real estate depreciation in calculating income for child support).

{¶ 43} Furthermore, "[a] party claiming a business expense has the burden of providing suitable documentation to establish the expense. A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts." *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 53. When evidence to support a claim for depreciation expenses is absent from the record, it is not an abuse of discretion for a trial court to disallow those expenses and include them as income. *Sullivan*, 167 Ohio App.3d 458, 2006-Ohio-3206, ¶ 27.

{¶ 44} In the present case, Timothy states that the depreciation listed on the tax returns represents the building and equipment for the hog-finishing business. He claims that the partnership does not own the building or equipment, but that they make the payments due on the property instead of paying rent to their father. He maintains that the business "did not deduct a rental value as the rent was the payment of the principal and interest due which equals interest and which equals depreciation."

{¶ 45} The only records Timothy provided to the court were the IRS Schedule F forms (Profit or Loss from Farming) for his 2006 and 2007 federal

income tax returns, which simply list a line 16 "depreciation and section 179 expense deduction" of approximately $17,000 for each year. There is also a line 23 interest deduction for each year, and nothing is listed for rent. There was no backup paperwork explaining how the depreciation expense was computed or what it represents, nor was there any proof that it was part of the ordinary and necessary expenses of doing business. Timothy has not provided any documentation that any of this money was actually paid out, nor does he explain how his business is able to take a depreciation deduction under the IRS regulations for assets that it claims it does not own. There was no evidence before the court that would indicate this money was actually expended as an ordinary and necessary business expense. It appears to be a deduction taken for federal income tax purposes, and Timothy has not provided a proper basis for excluding this depreciation write-off from his income.

{¶ 46} The trial court did not abuse its discretion in disallowing the exclusion of the depreciation deduction from Timothy's income. The seventh assignment of error is overruled.

### Eighth Assignment of Error

{¶ 47} In his final assignment of error, Timothy claims that the trial court abused its discretion in finding that a shared-parenting plan was not in the best interest of the children. Timothy argues that because he and Amy filed shared-

parenting plans and the guardian ad litem recommended shared parenting, the trial court erred in not adopting any of the plans.

{¶ 48} A trial court has broad discretion in determining whether to order shared parenting. *Lopez v. Coleson*, 3d Dist. No. 12-05-24, 2006-Ohio-5389, ¶ 6; R.C. 3109.04(D)(1)(b). An appellate court will presume that a trial court's decision regarding child custody is correct and will not reverse the decision absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178.

{¶ 49} R.C. 3109.04(D) sets forth standards and procedures for allocation of parental rights and responsibilities using a shared-parenting plan. Under R.C. 3109.04(D)(1)(a)(i), the trial court may deny a motion for shared parenting and proceed as if the motion had not been made if it determines that such a plan is not in the best interest of the children. In further discussing shared-parenting plans, the statute states:

> The approval of a plan under division (D)(1)(a)(ii) or (iii) of this section is discretionary with the court. The court shall not approve more than one plan under either division and shall not approve a plan under either division unless it determines that the plan is in the best interest of the children. *If the court, under either division, does not determine that any filed plan or any filed plan with submitted changes is in the best interest of the children, the court shall not approve any plan.*

(Emphasis added.) R.C. 3109.04(D)(1)(b).

{¶ 50} Although both Timothy and Amy filed shared-parenting plans, Amy made it very clear at trial that she did not feel shared parenting was appropriate. The parties' plans were very different, and Amy's plan, although labeled a "shared-parenting plan," more closely followed the typical plan associated with the allocation of a residential parent and traditional visitation schedule.

{¶ 51} The testimony at trial indicated that the parties had great difficulty cooperating with each other. There was considerable testimony about the derogatory and demeaning language that Timothy used in reference to Amy in the presence of the children. Amy had been the children's primary caretaker ever since their birth. It was only recently that Timothy began to take a more active role in the children's lives.

{¶ 52} Although the guardian ad litem recommended shared parenting, the primary rationale for that recommendation was to allow the children to spend time with each parent. The guardian ad litem's report also stated, "I am not confident Tim and Amy are at a point emotionally they can work together," and "the parents' disparate emotional states * * * will make Shared Parenting difficult." The guardian ad litem even recommended exchanges at a public place due to the relationship of the parties.

{¶ 53} The trial court found:

> The very crux of shared parenting requires the parties to cooperate with one another in the daily lives of the children. The Court does

not believe that these parties can cooperate to the extent necessary to implement any type of shared parenting plan. Such a forced cooperation would not be in the best interests of the children. Accordingly, the Court rejects the shared parenting plans of the parties.

**{¶ 54}** Although the trial court designated Amy as the residential parent and legal custodian, it addressed the guardian ad litem's concerns and awarded Timothy more time with the children than normally allotted under standard visitation orders. Based upon the testimony and evidence before the trial court, we do not find that the court abused its discretion when it declined to order a shared-parenting plan. Timothy's eighth assignment of error is overruled.

**{¶ 55}** Based on the foregoing, we find that seven of Timothy's assignments of error are overruled and the judgment of the trial court pertaining to those assignments of error is affirmed. Timothy's fifth assignment of error is sustained, and the matter is remanded to the trial court for further consideration

consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

PRESTON, P.J., and SHAW, J., concur.