[Cite as *Neu v. Neu*, 2013-Ohio-221.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
PUTNAM COUNTY


SHARON A. NEU,

      PLAINTIFF-APPELLEE,                CASE NO. 12-12-11

      v.

JAMES W. NEU,                    O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Putnam County Common Pleas Court
Domestic Relations Division
Trial Court No. 2007 DIV 00128

Judgment Affirmed

Date of Decision:   January 28, 2013


APPEARANCES:

    *Clay W. Balyeat* for Appellant

    *Ted E. Cornwell* for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, James W. Neu, appeals the judgment of the Putnam County Court of Common Pleas, Domestic Relations Division, granting the motion of plaintiff-appellee, Sharon A. Neu, to increase appellant's child support. For the reasons that follow, we affirm.

{¶2} On May 25, 2007, Sharon filed a divorce complaint alleging extreme cruelty and gross neglect of duty. (Doc. No. 1). Two children were born from the marriage, both minors when the divorce complaint was filed. (*Id.*). A third child, born to Sharon prior to the marriage and adopted by James during the marriage, was emancipated shortly after the filing of the divorce complaint. (*Id.*).

{¶3} On July 10, 2007, James filed an answer denying Sharon's allegations of extreme cruelty and gross neglect of duty, admitting incompatibility, and praying for a divorce. (Doc. No. 12).

{¶4} On October 1, 2008, the trial court filed its judgment entry of divorce incorporating the parties' separation agreement. (Doc. No. 78). James agreed to pay $534.53/month in child support as part of the separation agreement. (*Id.*).

{¶5} On February 17, 2012, Sharon filed a motion to modify child support and for non-covered healthcare expenses. (Doc. No. 143). That same day, Sharon filed a contempt motion against James for allegedly failing to pay for counseling services and medical expenses for their minor children. (Doc. No. 144).

{¶6} On March 21, 2012, a "notice of child support investigation termination of support" was filed indicating that James' child support obligation for one of the parties' minor children should terminate effective May 27, 2012 in light of the minor child's emancipation. (Doc. No. 152). The notice indicated that James' child support obligation would be reduced to $267.26/month at that time. (*Id*.).

{¶7} On April 26, 2012, James filed a motion for court-ordered counseling for the parties and their remaining minor child. (Doc. No. 154).

{¶8} On June 12, 2012, the motions came on for hearing. At the beginning of the hearing, the trial court revealed the results of an in-camera interview with the minor child, and thereafter, James withdrew his motion for court-ordered counseling. (June 12, 2012 Tr. at 3). James also agreed to pay Sharon $739.59 for the minor children's unpaid medical expenses resolving the contempt motion. (*Id*. at 4-7); (June 13, 2012 JE, Doc. No. 168). Thereafter, the parties presented testimony concerning their incomes for purposes of the motion to modify child support. (June 12, 2012 Tr. at 7-39); (June 13, 2012 JE, Doc. No. 168). The trial court determined that James' child support obligation should be modified to $901.98/month, effective February 17, 2012 through May 27, 2012; and thereafter, modified to $609.68/month. (June 13, 2012 JE, Doc. No. 168).

{¶9} On June 26, 2012, James filed a notice of appeal. (Doc. No. 171). James now raises one assignment of error for our review.

**Assignment of Error**

**The trial courts [sic] calculation of child support is an abuse of discretion.**

{¶10} In his sole assignment of error, James argues that the trial court abused its discretion by failing to include his business losses in his income for purposes of calculating his modified child support obligation.

{¶11} It is well-settled that a trial court's decision on a motion to modify child support will not be reversed absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is more than an error of judgment; rather, it implies that the decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} When determining a parent's income for purposes of calculating child support, the trial court must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05(A). While federal and state tax documents provide a proper starting point, they are not the sole factor for the trial court to consider when determining a parent's income. *Houts v. Houts*, 99 Ohio App.3d 701, 706 (3d Dist.1995). Often, income for child

support purposes is not equivalent to the parent's taxable income. *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, ¶ 13 (12th Dist.).

**{¶13}** In relevant part, R.C. 3119.01(C)(5) defines "income" for purposes of calculating child support, as "* * * the gross income of the parent." "Gross income," in turn, is defined as:

> * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * * and all other sources of income. 'Gross income' includes * * * self-generated income; and potential cash flow from any source."

R.C. 3119.01(C)(7).

**{¶14}** When determining the gross income of a self-employed parent, the trial court must deduct ordinary and necessary expenses from the parent's gross receipts. *Foster*, 2002-Ohio-6390, at ¶ 19. Pursuant to R.C. 3119.01(C)(9)(b),

ordinary and necessary expenses "[do] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business," except as "specifically included in 'ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section[.]" R.C. 3119.01(C)(9)(a) then defines ordinary and necessary expenses as "actual cash items expended * * * and includes depreciation expenses of business equipment."

{¶15} At the hearing, James testified that he has been a general laborer at General Dynamics for five years as of July 23, 2012. (June 12, 2012 Tr. at 14). James identified plaintiff's exhibit three as his General Dynamics' W-2 statements from 2009, 2010, and 2011. (*Id*. at 15). James' yearly gross income from General Dynamics was $53,347.51 in 2009; $66,118.93 in 2010; and, $72,786.77 in 2011. (P's Ex. 3). James testified that, as of January 26, 2009, his pay rate at General Dynamics was $22.05 per hour; his pay rate, as of July 23, 2009, was $23.72 per hour; and, his current pay rate is $31.53 per hour. (June 12, 2012 Tr. at 29); (Joint Ex. A).

{¶16} James testified that he had additional income from his business, All Star Athletic Fields, L.L.C. ("All Star"), which he started in 2008 for the purpose of renovating baseball and softball fields for high schools and municipalities. (*Id*. at 16-17, 27). James identified plaintiff's exhibits four, five, and six as his 2009,

2010, and 2011 tax returns, respectively. (*Id.* at 17). James testified that All Star reported the following losses for tax purposes: in 2009, $18,083; in 2010, $22,054; and, in 2011, $42,977. (*Id.* at 17-18); (P's Exs. 4-6). When questioned about All Star's substantial loss in 2011, James testified that he took a lump sum I.R.S. Section 179 deduction for equipment he purchased for All Star, including: an enclosed trailer, a steel saw, top dresser, power washer, field groomer, and a ranger. (June 12, 2012 Tr. at 36). James also testified that it was "very possible" he would close All Star in 2012 in light of the substantial losses, though his plans were not final. (*Id.* at 27-29, 37).

{¶17} James testified that, after deducting his $18,083 business loss from his income, his net income for 2009 tax purposes was $35,265. (*Id.* at 34); (P's Ex. 4). James testified that his total depreciation on his 2011 Schedule C was $26,494. (June 12, 2012 Tr. at 35); (P's Ex. 6). James testified that, of that amount, $21,434 was for his Section 179 deduction. (June 12, 2012 Tr. at 35). James testified that, when he purchased the equipment for All Star in 2011, he was not aware that Sharon was going to seek a modification of child support. (*Id.* at 36).

{¶18} After reviewing the testimony, the trial court concluded the following concerning All Star's losses relative to its calculation of James' gross income for child support purposes:

[James] testified that the second business currently has a profit for the tax year 2012 of approximately $5,000.00. Testimony established that the second business would either have a profit or would be closed down to end any future losses. Testimony did not establish any losses which should be taken into account in computing the income level of [James]. Significant portions of the losses were produced by depreciation expenses and were manipulated for tax purposes or in contemplation of a child-support recalculation.

(June 13, 2012 JE, Doc. No. 168). Thus, the trial court did not include All Star's losses in James' income for purposes of the child support calculation; instead, the trial court relied exclusively upon James' income from General Dynamics. (*Id*.).

{¶19} After reviewing the record, we cannot conclude that the trial court abused its discretion by failing to include All Star's losses as part of James' income for its child support calculation. While James testified that he purchased certain pieces of equipment for All Star in 2011 and that he had "supporting documents" in his possession, he never submitted any evidence demonstrating those purchases beyond the tax return, itself. (June 12, 2012 Tr. at 36-37). "'A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in

generating gross receipts.'" *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 43 (3d Dist.), quoting *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 53. Rather, the obligor has the duty to ascertain which items are exempt from inclusion as gross income as ordinary and necessary business expenses under R.C. 3119.01(C)(9)(a) and demonstrate the expenses through "independent evidence" beyond the tax return. *In re K.P.*, 2d Dist. No. 2011-CA-68, 2012-Ohio-1094, ¶ 19; *Cronin v. Cronin*, 11th Dist. No. 2011-L-134, 2012-Ohio-5592, ¶ 28-29; *Janecek v. Marshall*, 11th Dist. No. 2010-L-059, 2011-Ohio-2994, ¶ 17-18 (obligor failed to provide receipts for Section 179 depreciation in the amount of $34,350.00). "When evidence to support a claim for depreciation expenses is absent from the record, it is not an abuse of discretion for a trial court to disallow those expenses and include them as income." *Huelskamp*, 2009-Ohio-6864, at ¶ 43, citing *In re Sullivan*, 167 Ohio App.3d 458, 2006-Ohio-3206, ¶ 27 (11th Dist.). Consequently, the trial court did not abuse its discretion by disallowing All Star's losses.

{¶20} Aside from the lack of evidence demonstrating the business expenses, the trial court also found that James created All Star's substantial loss in 2011 in order to decrease his child support obligation.

{¶21} A trial court must beware of "'the possible manipulation of the numbers contained on the [tax] return to conceal income which, as a practical

matter, may be available for child support purposes.'" *In re Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, ¶ 50 (2d Dist.), quoting *Offenberg v. Offenberg*, 8th Dist. Nos. 78885, 78886, 79425, and 79426, 2003-Ohio-269, ¶ 30.  A trial court's finding that an obligor's tax return was used to conceal income for child support purposes amounts to a credibility determination for which the trial court was best positioned and should not be second-guessed by an appellate court. *See Burns v. Burns*, 12th Dist. No. CA2011-05-050, 2012-Ohio-2850, ¶ 19.

{¶22} The record indicates that James started All Star in 2008. (June 12, 2012 Tr. at 17).  In tax years 2009 and 2010, James claimed business losses of $18,083 and $22,054, respectively; however, in neither of those two tax years did James claim any Section 179 deductions. (P's Exs. 4-6).  When James filed his 2011 taxes, however, he claimed $42,977 in losses, including $21,434 in Section 179 deductions. (P's Ex. 6); (June 12, 2012 Tr. at 18, 35).  James testified that he purchased business equipment in 2011, and he decided to take the lump sum Section 179 deduction instead of depreciating the equipment's value over five to seven years like he had done in previous tax years. (June 12, 2012 Tr. at 18).  When asked why he claimed Section 179 deductions in 2011 but had not claimed these deductions in 2009 and 2010, James testified, "I don't really know, I just don't think I maybe was aware of 179 prior, prior years." (*Id*. at 19).  Although James admitted that he filed his 2011 tax return near the end of May 2012 or the

beginning of June 2012, *after* the motion to modify child support was filed, James denied that his decision to claim the $21,434 lump sum Section 179 deduction was motivated by the pending motion. (*Id*. at 19-22). When asked if he thought decreasing his income by such a significant amount was in his children's best interest, James testified "[a]bsolutely * * * [b]ecause I'm legally entitled to do that." (*Id*. at 23-24).

{¶23} After reviewing the record, we cannot find the trial abused its discretion by finding that James manipulated his 2011 tax returns for purposes of the pending motion to modify child support. James argues that the trial court's finding is not supported by the evidence, because he could not have anticipated the motion to modify when he purchased the business equipment since it was filed in February 2012. While James is correct that he could not anticipate the motion when he purchased the equipment in 2011, James decided to take the Section 179 deduction *after* the motion was filed—something he never did in previous years and something that significantly reduced his income for child support purposes. (*See* June 12, 2012 Tr. at 36). It is also noteworthy that James filed his 2009 and 2010 tax returns on March 28, 2010 and March 3, 2011, respectively; however, James did not file his 2011 tax return until the end of May 2012 or the beginning of June 2012, after obtaining an extension and just prior to the hearing on the motion to modify. (P's Ex. 4-6); (June 12, 2012 Tr. at 22). This fact further

supports the trial court's finding that James manipulated his 2011 tax return in light of the recently filed motion to modify child support. Thus, the trial court did not abuse its discretion by failing to deduct All Star's alleged business expenses from James' income for child support purposes in light of its finding that James manipulated his 2011 tax returns for child support calculation purposes.

{¶24} As a final matter, irrespective of whether or not James manipulated his 2011 tax returns, the trial court did not abuse its discretion by calculating James' income at $77,251.00 per year in light of the following evidence admitted into the record: at the time of the hearing, James was making $31.53 per hour, for a base pay of $65,582.00 per year; James' average yearly overtime pay is $11,669.00; and James was planning on terminating All Star in 2012. (Joint Ex. A); (P's Ex. 3); (June 12, 2012 Tr. at 15, 28-29, 32, 37). Based upon this evidence, the trial court could appropriately calculate James' income at $77,251.00 per year for child support purposes.

{¶25} For all these reasons, James' assignment of error is overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, J., concurs.**
**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**