[Cite as *Landis v. Landis*, 2020-Ohio-6768.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| AUDREA LANDIS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28631 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-754 |
| | : | |
| JUSTIN LANDIS | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of December, 2020.

. . . . . . . . . . .

JAMIE L. ANDERSON, Atty. Reg. No. 0081218, 2190 Gateway Drive, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

MARK D. WEBB, Atty. Reg. No. 0085089, 140 North Main Street, Suite B, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Justin Landis appeals from a final judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations Division. Justin challenges the trial court's valuations of the parties' business and their marital home and its failure to award him half of the amount his former wife withdrew from her bank account prior to their separation. He also challenges the amount of child support the trial court ordered him to pay. Finally, Justin claims the trial court erred regarding its division of the marital debt.

{¶ 2} For the following reasons, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

{¶ 3} Audrea and Justin Landis were married in 2002 and have two minor children. Audrea filed a complaint for divorce in August 2016. Justin filed an answer and counterclaim that same month. Hearings were conducted over six days in October and December 2018 and on one day in May 2019.

{¶ 4} Of relevance hereto, the trial court valued and divided the parties' retail business and their marital residence. The trial court ordered Justin to pay the entire credit card debt. The trial court also ordered Justin to pay child support to Audrea. Finally, the court denied Justin's request that Audrea reimburse him for one-half of the amount she withdrew from her individual account.

{¶ 5} Justin appeals.

## II. Business Valuation

{¶ 6} Justin's first assignment of error states as follows:

THE TRIAL COURT ERRED IN ORDERING HUSBAND TO PAY WIFE ONE-HALF OF "DISTRIBUTIONS" FROM THE BUSINESS.

{¶ 7} Justin contends that the trial court erred regarding the valuation of the business the parties started during the marriage.

{¶ 8} In 2012, the parties opened J & J Sports, L.L.C., a retail firearms business. The parties originally ran the business from the marital residence. However, the business was later moved to a retail space located in Brookville. The trial court awarded the business to Justin and ordered him to pay Audrea the sum of $46,030.50 as her one-half share of the business. Justin asserts that the trial court's valuation of the business was erroneous, contending, in essence, that his expert witness was more credible than Audrea's.

{¶ 9} When parties present substantially different valuations of an asset, the trial court is free to believe all, part, or none of any witnesses' testimony. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 27 (3d Dist.); *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). The court, in the end, must make its own determination as to valuation based on the evidence presented. *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995).

{¶ 10} A reviewing court must affirm a trial court's determination if it is supported by competent, credible evidence and is not otherwise an abuse of discretion. A trial court abuses its discretion when the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "It is to be expected that most instances of abuse of discretion will result in

decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

**{¶ 11}** The evidence demonstrates that the parties originally agreed to use Terry Yoho to perform the valuation of the business.[1] At trial, Yoho testified that she utilized the "asset method" to determine the fair market value of the business, which she valued at $89,300 at year-end 2015. She testified the asset method was more appropriate than other methods given the specific circumstances of this business. She also testified the asset method normally results in a "minimum value." Tr. p. 378. Further, Yoho testified that this value took into account the fact that the business was encumbered by approximately $200,000 in loans payable to Justin's family.[2]

**{¶ 12}** Yoho also performed a valuation as of year-end 2016 and assigned the business a value of zero. However, she testified Justin had taken distributions in the amount of $92,061 during 2016. She further testified that, absent such distributions, the value of the business would have been $92,061. Yoho testified that, once again, she took into account the debts of the business, including the loans to Justin's parents and the credit card debt Justin attributed to the business.

**{¶ 13}** Yoho further testified that a business owner can "increase loans, decrease

---

[1] Justin does not dispute Yoho's qualifications to provide expert testimony regarding the value of the business. According to Yoho's testimony, she was a licensed, certified public accountant with specialized certifications in financial forensics and fraud and had extensive experience in the area of business valuations.

[2] The trial court found credible the testimony of Justin's mother regarding the existence of the loans even as it noted there were no documents or records regarding the loans.

cash, and/or take distributions" from a business in order to lower the value of the business. Tr. p. 396. She testified that all three actions took place in this case. Finally, Yoho testified that the business regularly conducted cash sales and postal money order sales made out solely to Justin rather than to the business, but she did not conduct an audit of the business records to determine whether these sales were properly recorded.

{¶ 14} Justin presented the testimony of Alan Duvall, C.P.A., whom he hired to dispute Yoho's 2016 valuation. Duvall testified that he also used the asset method and also assigned a value of zero to the business for 2016. However, he testified that the distributions taken by Justin during 2016 should have been considered cash flow rather than income, and thus that the distributions should not have affected the fair market value of the business.

{¶ 15} The trial court found the value of the business to be zero at year-end 2016. The court also explicitly stated it found Yoho's testimony more credible than Duvall's testimony. Thus, the court found that the value of the business would have been $92,061.00 had Justin not taken the 2016 distributions. The court further found that Justin had failed to prove the distributions were used solely to benefit the marital unit. Given this, the court awarded the business to Justin, but ordered him to pay Audrea the sum of $46,030.50 as her one-half share of the 2016 distributions.

{¶ 16} After reviewing what can only be described as a voluminous record, we conclude that the trial court did not abuse its discretion concerning the business valuation and the ordered distribution. Evidence in the record supported a finding that Justin acted in a manner to reduce the value of the business beginning in 2016. Evidence also supported Yoho's valuation and her conclusion that the 2016 distributions lowered the

value of the business.   Thus, we cannot conclude that the trial court erred in ordering Justin to pay Audrea one-half of the distributions taken from the business in 2016.

{¶ 17} Accordingly, the first assignment of error is overruled.


### III.    Credit Card Debt

{¶ 18} The second assignment of error asserted by Justin states:

THE TRIAL COURT ERRED IN FAILING TO DIVIDE THE PARTIES' CREDIT CARD DEBT OR IN THE ALTERNATIVE, ACCOUNTING FOR THE CREDIT CARD DEBT IN THE VALUATION OF THE BUSINESS EQUITY.

{¶ 19} Justin challenges the trial court's decision insofar as it made him responsible for the entirety of the business credit card debt.

{¶ 20} The record demonstrates there are six credit cards at issue; an American Express Business Card, a Bass Pro Bank of America Card, a Community Bank Gander Mountain Card, a Chase Credit Card, a Bank of America Credit Card and an American Express Plum Card.

{¶ 21} The trial court found that Justin had "failed to demonstrate that the corporate credit card debt ha[d] any significant marital portion," and thus concluded that the credit card debt was solely corporate debt.

{¶ 22} Again, the record regarding the credit card debt is voluminous.   Clearly, the trial court did not err in attributing some of that debt to the business.   However, even a cursory review of the credit card records reveals that there are non-business charges on the cards, and that some of those charges are not minimal.   It is unclear from the record

before us what portion of the non-business credit card debt is marital and what portion is personal to Justin.[3]   However, it is clear that the trial court erred in attributing all of the credit card debt to the business.

**{¶ 23}** In so holding, we do not intend to indicate that the trial court erred by assigning the entirety of the debt to Justin.   Indeed, under the circumstances of this case, such an order may be appropriate.   However, the trial court's stated basis for the assignment of the credit card debt was based upon an incorrect classification of that debt. Thus, we cannot say the trial court properly exercised its discretion on this issue.

**{¶ 24}** Accordingly, the second assignment of error is sustained.


### IV.    Marital Residence

**{¶ 25}** Justin asserts the following for his third assignment of error:

THE TRIAL COURT ERRED IN ORDERING HUSBAND TO PAY WIFE $53,602.50 FOR HER SHARE OF THE EQUITY IN THE MARITAL RESIDENCE AS THIS AMOUNT REFLECTS AN INFLATED VALUE NOT SUPPORTED BY THE EVIDENCE AND INCONSISTENT WITH THE COURT'S DETERMINATION OF THE MARITAL PROPERTY DIVISION DATE.

**{¶ 26}** Justin objects to the trial court's decision to credit the testimony of Audrea's expert, Victor Grabeman, as to the value of the parties' real estate located on Lewisburg-Ozias Road in Preble County.   Justin does not challenge Grabeman's qualifications.

---

[3] For example, there are charges on one card related to a vacation Justin took with his girlfriend.

Instead, he argues that Grabeman's methodology was unreliable because he went outside of Preble County in order to find comparable properties. Justin further claims that the trial court abused its discretion as to the date of the valuation of the property and the amount of the mortgage debt.

{¶ 27} The parties purchased the residence in 2005 or 2006 for $150,000. In 2009, they purchased additional, adjacent land for $16,000. In 2010, the parties refinanced the property, which was assigned a market value at that time of $225,000. That same year, they built a large barn which contained stalls, a kitchenette, a bathroom, and a riding arena. Audrea testified that the barn construction cost $100,000. Justin testified it cost far less, but did not provide a different cost amount.[4]

{¶ 28} Victor Grabeman testified on behalf of Audrea regarding the value of the property, while Robert Nagle, who was also a qualified expert, testified on Justin's behalf. Grabeman performed an appraisal of the property in 2017 and concluded the market value was $248,000. He testified, however, that he thought the value was higher, but he had been unable to find any recent sales involving properties with similar barns. Grabeman conducted a second appraisal in 2018 and valued the property at $290,000; he testified the increased appraisal amount was based upon his discovery of recent comparable sales of properties with similar barns, which resulted in a more accurate valuation.

{¶ 29} Robert Nagle also conducted two appraisals of the property. His first appraisal valued the property at $184,000, and his second assigned it a value of

---

[4] The record contains a copy of an e-mail or text message from Justin to Audrea in which he referred to the barn construction cost as $100,000. Justin testified the message was an exaggeration, but he did not deny writing it. Plaintiff's Exh. No. 61.

$177,000. Nagle testified that he thought Grabeman's appraisal failed to account for serious repairs the farmhouse needed. He also thought Grabeman's comparable properties were too far from the marital property to be of assistance in arriving at an accurate valuation.

{¶ 30} Justin first claims that Grabeman did not adhere to the Uniform Standards of Professional Appraisal Practice in reaching his second valuation because he went outside of Preble County to locate comparable properties. Justin claims Nagle's valuation was more reliable because he stayed within seven miles of the marital property when looking for comparable properties.

{¶ 31} Justin has failed to demonstrate that Grabeman violated the standards for appraisals. Indeed, both Grabeman and Nagle testified that the standards provide flexibility in the location of comparable properties and do not set forth a proximity limitation. Further, one of Grabeman's comparables was located in Preble County approximately seven miles from the marital property. Grabeman explained that the need to go outside Preble County to locate comparable properties was based upon the difficulty of locating properties with barns equipped with indoor riding arenas. Grabeman also testified that all of the comparable properties he used were in the general area of the marital residence, and that their use did not violate any acceptable valuation practice.

{¶ 32} Justin also complains that Grabeman's valuation gave too much significance to the barn's indoor riding arena. But Grabeman testified that the highest and best use of the property included the use of the arena.

{¶ 33} Justin next claims Grabeman failed to take into account significant repairs needed to the marital house. However, Grabeman's testimony refutes this claim.

{¶ 34} Based upon the evidence in this record, we cannot conclude the trial court abused its discretion when it gave more credence to Grabeman's valuation than Nagle's valuation. The record, including Grabeman's report and testimony, demonstrated that the value assigned by the court was supported by the evidence.

{¶ 35} We further conclude that the trial court did not err regarding the date of the property valuation. While Justin argues the value of the property should have been determined as of the de facto termination date of the marriage, September 30, 2016, the property remained a jointly-held asset until the date of the final decree. The trial court acted within its discretion by utilizing a value closer to the time of the hearing as opposed to the de facto termination date.

{¶ 36} Finally, Justin argues that the trial court erred when it determined the equity in the property because the court used the mortgage indebtedness amount as of April 2018. Justin contends this was error because he paid all expenses related to the property after the de facto termination date of the marriage. The record shows the mortgage balance was $159,667 as of December 31, 2016, and that it was $154,795 in April 2018, a difference of less than $5,000. We cannot find and Justin does not refer us to parts of the record that support his claim that he paid all the mortgage expenses after the de facto termination date. Thus, we cannot say the trial court abused its discretion by utilizing the later date in determining the value of the jointly-held asset.

{¶ 37} The third assignment of error is overruled.

## V.    Wife's Account

{¶ 38} The fourth assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO DIVIDE THE $13,000 WIFE WITHDREW FROM HER INDIVIDUAL ACCOUNT IMMEDIATELY PRECEDING HER DIVORCE FILING.

{¶ 39} Justin asserts the trial court improperly failed to require Audrea to pay him one-half of the $13,000 she withdrew from her separate bank account shortly before filing her complaint for divorce. He claims that "[f]ailing to order the division of this bank account [ran] contrary to the court's own decision to require [Justin] to provide, and then subsequently ignore, an accounting of the marital expenditures which were drawn from the business."

{¶ 40} Audrea testified that some of the funds she withdrew were used for her attorney fees and that some were used for everyday expenses. The trial court found it equitable to deny Justin's request for one-half of these funds. The court stated:

Although [Audrea] acknowledged that some of the money was spent on attorney fees, that does not necessarily mean Justin is entitled to one-half of these funds. By the time the withdrawals were made, the parties had been living separate and apart for a long period of time and they had separate bank accounts. Also, each party was funding their respective bank accounts with primarily their own respective earnings. Finally, the fact that Audrea spent some money out of her individual account does not mean Justin is entitled to some of the money withdrawn.

{¶ 41} We note there was no evidence to show the account in question was jointly funded. There was also evidence in the record to demonstrate that, at that time, Audrea was paying for medical insurance, dental fees, counseling for the parties' son, school

supplies and lunches, and the children's extracurricular activities. Thus, we cannot say that the trial court abused its discretion in failing to order Audrea to reimburse Justin for these expenditures. The fourth assignment of error is overruled.

## VI. Child Support

**{¶ 42}** Justin's fifth assignment of error provides:

THE TRIAL COURT ERRED IN ONLY IMPLEMENTING A 25% DEVIATION ON LINE 25 OF THE CHILD SUPPORT WORKSHEET DESPITE THE PARTIES' EQUAL PARENTING SCHEDULE.

**{¶ 43}** Justin challenges the trial court's decision regarding the amount of child support awarded to Audrea. He argues that the court should have ordered a larger deviation from the child support guidelines.

**{¶ 44}** "As with most matters pertaining to child support, the decision to deviate from the actual annual obligation is discretionary and will not be reversed absent an abuse of discretion." *Hattenbach v. Watson*, 2d Dist. Montgomery No. 27071, 2016-Ohio-5648, ¶ 14, citing *Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 6.

**{¶ 45}** When calculating child support, a court is to use the worksheet set forth in R.C. 3119.022 combined with the basic schedule set forth in R.C. 3119.021. The amount of child support established by this calculation produces a rebuttable presumption of the proper amount of child support. R.C. 3119.03; *Marker v. Grimm*, 65 Ohio St.3d 139, 141, 601 N.E.2d 496 (1992). R.C. 3119.22 allows the court to order a deviation from the rebuttably-presumed amount after considering the factors in R.C. 3119.23. However, "[t]he party seeking to rebut the basic child support schedule has the burden of

presenting evidence which demonstrates that the calculated award is unjust or inappropriate and would not be in the best interest of the child." *Murray v. Murray*, 128 Ohio App.3d 662, 671, 716 N.E.2d 288 (12th Dist.1999).

{¶ 46} The evidence adduced at the hearing established that Audrea earned a yearly salary of $34,000. She also received $2,400 per year as spousal support.[5] Justin earned a yearly salary of $50,000. The record also reveals that Audrea paid over $1,500 per year to provide health insurance for the children and that she paid for the extracurricular activities of the children.

{¶ 47} According to the child support guidelines, the amount of support owed by Justin would be $703.14 per month. However, noting that Justin had "more than 150 overnights annually" with the children, the trial court determined a downward deviation was appropriate and ordered Justin to pay child support in the amount of $527.14 per month.[6] This represented a downward deviation of $176 per month, or slightly more than 25%.

{¶ 48} Based upon the disparity in the parties' incomes, Audrea's payment of the health insurance premiums, and the fact that the trial court did deviate downward from the child support guidelines, we cannot say the trial court abused its discretion in setting the amount of child support.

{¶ 49} Accordingly, the fifth assignment of error is overruled.

---

[5] The spousal support award was payable for a term of 64 months.

[6] Extended parenting time is a relevant factor for consideration when determining whether to deviate from the guidelines. R.C. 3119.23(C)

## VII.    Conclusion

**{¶ 50}** The second assignment of error is sustained, and the other assignments of error are overruled.   The trial court's judgment is reversed with respect to the business credit card debt, and we remand for further proceedings on that issue.   In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Jamie L. Anderson
Mark D. Webb
Hon. Timothy D. Wood